WILLIAM R. CONE AND OTHERS, EXECUTORS, *vs.* AUSTIN C. DUNHAM AND OTHERS.

Hartford Dist., Oct. T., 1889. ANDREWS, C. J., PARDEE, LOOMIS, SEYMOUR and PRENTICE, Js.

*D* gave to *A* the following receipt:—"Hartford, August 14th, 1850. Received of J. R. A. $80, being the first installment on eight shares of the Ætna Life Insurance Company's stock standing in my name but owned by him, and he remaining responsible for the balance of the installments when called in. *A. D.*" Held that the trust raised by this transac-

tion was an implied and not an express one, and that the statute of limitations therefore ran against it.

After the death of *D* and a transfer of a portion of the stock, (now largely increased by stock dividends,) without an order of distribution, to his legatees, his executors submitted the question of the liability of his estate upon the contract to an arbitrator, the other party to the submission being the executors of *A*. Held that the legatees of *D*, not being a party to the submission, were not bound by the award, and that it was not admissible in evidence in favor of the executors of *A* in a suit brought by them for the stock against the executors and legatees of *D*.

In the statute regarding the presentation of claims against the estate of a deceased person, there is no provision for the suspension of the statute during the disability of any claimant, and such a claimant, not presenting his claim within the time limited, is barred by it.

Where the death of a person is presumed from his absence for seven years unheard of, there is no presumption that he died before the end of the seven years.

*A* disappeared two years before the death of *D*, and was never heard from. Held that there was no presumption that he was not living during the six months limited soon after D's death for the presentation of claims against his estate.

And the running of the general statute of limitations against the claim was not suspended by *A's* absence unheard-of for seven years.

[Argued November 14th, 1889—decided January 6th, 1890.]

SUIT for the recovery of certain insurance stock, and for an account of cash and stock dividends received; brought to the Superior Court in Hartford County. The plaintiffs were the executors of James H. Averill and the defendants the executors and devisees and legatees of Austin Dunham. The case was heard before *Carpenter, J.*, the facts found and judgment rendered for the plaintiffs. The defendants appealed. The case is fully stated in the opinion.

*A. P. Hyde* and *C. J. Cole*, for the appellants.

1. The court erred in overruling the claim of the defendants that the action is barred by the statute of limitations. Gen. Statutes, §§ 1371, 1376, as to barring actions, and § 581 as to limitation of claims against the estates of deceased persons. There is a marked distinction between the two statutes in several very important respects. The former are suspended in case of disability of the plaintiff at the time the action accrues; but the limitations against an estate are

an absolute bar, and there is no provision for suspension during the disability of the plaintiff. This distinction is remarked upon in *Atwood* v. *Agricultural Bank*, 2 R. Isl., 191, 197. See also *Pratt* v. *Northam*, 5 Mason, 95, 112; *Rowell* v. *Patterson*, 76 Maine, 196; *Morgan* v. *Hamlet*, 113 U. S. R., 449; Schouler on Exrs., §§ 418, 419; 2 Lewin on Trusts, 866. The statute of limitations as to claims against estates is highly favored. Angell on Limitations, 5th ed., 161; 3 Wms. on Exrs., 6th Am. ed., 2134, note; *Sugar River Bank* v. *Fairbanks*, 49 N. Hamp., 131. And the protection of the estate is deemed so important, that it has been held that the executor or administrator has no power to waive or extend the limitation ; that it is his duty to plead the bar. *Brown* v. *Anderson*, 13 Mass., 201; *Dawes* v. *Shed*, 15 id., 6; *Emerson* v. *Thompson*, 16 id., 429; *McLaren* v. *McMartin*, 36 N. York, 88; Schouler on Exrs., § 389; Wood on Limitations, § 190; *Hart's App. from Probate*, 32 Conn., 540. Equity follows the analogies of the law in the matter. 2 Lewin on Trusts, 864; *Kane* v. *Bloodgood*, 7 John. Ch., 190; *Belknap* v. *Gleason*, 11 Conn., 160. The plaintiffs cannot, by a mere change of forum, avoid the limitation of the statute. It operates against both legal and equitable remedies. *Kane* v. *Bloodgood*, supra; *Johnson* v. *Ames*, 11 Pick., 173; *Trecothick* v. *Austin*, 4 Mason, 16; *Zacharias* v. *Zacharias*, 23 Penn. St., 452; *Barton* v. *Dickens*, 48 id., 518; *Thomas* v. *Woodworth*, 63 Ill., 254; *Hayward* v. *Gunn*, 82 id., 385; *Johnson* v. *Smith's Admr.*, 27 Misso., 591; *Prewett* v. *Buckingham*, 28 Miss., 92; *Morgan* v. *Hamlet*, 113 U. S. R., 449. The statute does not run against technical, open, continuing trusts, because there the trustee holds in acknowledgment of the trust and not adversely. But if the trust is implied or constructive, the statute runs and operates as a bar, because in such cases the holding is adverse. Perry on Trusts, § 865; *Belknap* v. *Gleason*, 11 Conn., 160; *Phalen* v. *Clark*, 19 id., 421; *Hart's App. from Probate*, 32 id., 520; *Wilmerding* v. *Russ*, 33 id., 67; *Burditt* v. *Grew*, 8 Pick., 108; *Jones's Exrs.* v. *Lightfoot*, 10 Ala., 17; *Trecothick* v. *Austin*, 4 Mason, 16; *Bull* v. *Towson*, 4 Watts & Serg., 557; *Strimp-*

*fler* v. *Roberts*, 18 Penn. St., 300 ; *Prewett* v. *Buckingham*, 28 Miss., 92 ; Angell on Limitations, § 178. The trust in the present case is an implied, and not an express trust. 3 Bla. Com., 431 ; 2 Lewin on Trusts, 863 ; Bump on Bankruptcy, 547 ; *Sturt* v. *Mellish*, 2 Atk., 610 ; *Kane* v. *Bloodgood*, 7 Johns. Ch., 90 ; *Murray* v. *Coster*, 20 Johns., 576 ; *Trecothick* v. *Austin*, 4 Mason, 16, 30 ; *Johnson* v. *Ames*, 11 Pick., 173 ; *Harlow* v. *Dehon*, 111 Mass., 195 ; *Derome* v. *Vose*, 140 id., 575.

2. Mr. Averill placed the stock in Mr. Dunham's hands in fraud of his creditors, and consequently neither the contract nor the trusts can be enforced in law or equity. Bump on Fraud. Conveyances, 436, 440 ; Waterman on Spec, Performance, 339 ; Wait on Fraud. Conveyances, §§ 395, 396, 429 ; *Gaylord* v. *Couch*, 5 Day, 223 ; *Chapin* v. *Pease*, 10 Conn., 69 ; *Owen* v. *Dixon*, 17 id., 492 ; *Jackson* v. *Garnsey*, 16 Johns., 189.

3. The award should not have been admitted as evidence. The devisees and legatees of Mr. Dunham were not parties to the submission, and the executors had no power to submit the matter to arbitration in such a way as to affect their title to the stock, of which they had become the holders. So far as they were concerned their title was established by the general statute of limitations as well as by the special limitation for presentation of claims. What right or power had the executors to re-open the question as to them and their stock ? The limitation for presenting claims against an estate is a strict limitation, and executors and administrators have no power to waive its requisites. Executors cannot extend it, or revive a claim even by a direct promise. *Brown* v. *Andrews*, 13 Mass., 201 ; *Dawes* v. *Shed*, 15 id., 6 ; *Thompson* v. *Brown*, 16 id., 172 ; *Emerson* v. *Thompson*, id., 429 ; *Pratt* v. *Northam*, 5 Mason, 95; *Curtis* v. *Gill*, 34 Conn., 53 ; Enright on Interpretation of Statutes, § 204. The only possible manner in which a stale claim could be presented would be by the court of probate extending the limitation. And the statute now provides that submissions by executors may be by order of the probate court, and that

parties in interest shall be notified and cited in, and that they shall be entitled to appeal. Gen. Statutes, §§ 595, 6, 7. By inference any other mode of submission could bind no one but the parties to it.

*G. G. Sill* and *L. Sperry*, with whom was *G. E. Sill*, for the appellees.

1. The court committed no error in holding that the claim of the plaintiffs was not barred by the statute of limitations. It will hardly be denied that the statute does not affect an express and continuing trust. It will be useless to multiply authorities on this point and we refer only to the following :— *Wilmerding* v. *Russ*, 33 Conn., 67 ; *Philippi* v. *Philippe*, 115 U. S. R., 151; *Snyder's Admrs.* v. *McComb's Exr.*, 39 Fed. Rep., 292 ; Perry on Trusts, § 863 ; 2 Lewin on Trusts, 863. In *Wilmerding* v. *Russ* the court says an executor or administrator is a continuing trustee until the administration account is settled. Is this an express trust ? 1 Pomeroy's Eq., § 152, says : " All possible trusts, whether of real or personal property, are separated by an important line of division into two great classes; those created by the intentional act of some party having dominion over the property, done with a view to the creation of a trust, which are express trusts; those created by operation of law, where the acts of the parties may have had no intentional reference to the existence of any trust, which are implied trusts." There can be no difficulty in determining that Mr. Dunham intended to, and in fact did, create an express trust, against which the statute of limitations does not operate as a bar. The definition of a constructive trust is thus given in 2 Pomeroy's Eq., § 1044. " Constructive trusts include all those instances in which a trust is raised by the doctrines of equity for the purpose of working out justice in the most efficient manner, where there is no intention of the parties to create such a relation, and in most cases contrary to the intention of the one holding the legal title, and where there is no express or implied, written or verbal declaration of the trust. They arise when the legal title to property is obtained by a person in viola-

tion, express or implied, of some duty owed to the one who is equitably entitled, and when the property thus obtained is held in hostility to his beneficial rights of ownership. As the trusts of this class are imposed by equity, contrary to the trustee's intention and will, upon property in his hands, they are often termed *trusts in invitum;* and this phrase furnishes a criterion generally accurate and sufficient for determining what trusts are truly constructive. An exhaustive analysis would show, I think, that all instances of constructive trusts properly so called, may be referred to what equity denominates fraud, either actual or constructive, as an essential element, and as their final source. Even in that single class where equity proceeds upon the maxim that an intention to fulfill an obligation should be imputed, and assumes that the purchaser *intended* to act in pursuance of his fiduciary duty, the notion of fraud is not invoked simply because it is not absolutely necessary under the circumstances; the existence of the trust in all cases of this class might be referred to constructive fraud. This notion of fraud enters into the conception in all its possible degrees." These defendants are in no sense constructive trustees, unless it follows as a matter of legal inference that an express trust in the hands of Mr. Dunham became a constructive trust in the hands of his executors and legatees. But property once impressed with an express trust always remains an express trust into whatsoever hands it may pass, except a *bonâ fide* purchaser without notice and for value. 2 Pomeroy's Eq., § 1048. If it became, at the decease of Mr. Dunham, an implied or constructive trust, the statute of limitations would not be a bar to this complaint. The statute did not begin to run, at least, till September, 1882, when Averill's will was proved and the plaintiffs accepted the duties of executors. Averill went away in September, 1875, and was last heard of September 23, 1875. At the end of seven years from that date the law presumed he was then dead, not that he died at any particular date, but simply that he was dead at the end of seven years. He may have been dead when Mr. Dunham died. If he was and it was unknown, the

statute of limitations did not begin to run against his claim until his death was legally presumed and executors were qualified to act. Wood on Limitations, § 117; *Hobart* v. *Conn. Turnpike Co.*, 15 Conn., 145; *Amy* v. *Watertown*, 130 U. S. R., 320. So if this was a constructive trust and the statute of limitations applied to it, six years had not elapsed when this suit was brought.

2. The court did not err in holding that the plaintiffs were not barred by laches. They were appointed executors in September, 1882. An appeal was taken from the probate of Averill's will by his heirs at law. The appeal was decided in January or February, 1885. On March 3d, 1885, the plaintiffs made formal demand on Dunham's executors for the stock, increment and dividends. On May 6th, 1886, a submission was made to Gov. Ingersoll, to determine who was equitable owner, who made his award June 16th, 1886, and on June 22d, 1886, the plaintiffs made demand for the stock, and on November 25th the defendants were served with this complaint. Is it a question of law or fact whether the plaintiffs have been guilty of laches? If of fact, then the court below has found no laches. If it has become a question which this court can review, then we reply that laches can form no defense in case of an express trust. 1 Pomeroy's Eq., § 418. If it is a constructive trust there have been no laches. Perry on Trusts, §§ 228, 229, 230.

3. Nor were the plaintiffs barred by neglecting to present the claim against Mr. Dunham's estate within the six months limited by the probate court for the presentation of claims. There was at that time no one to present the claim. And there was no reason for presenting it. Our claim was a claim for stock owned by us, and which had been improperly inventoried by Mr. Dunham's executors as a part of his estate. Our remedy was by a suit to compel the executors and legatees to give up the stock. We do not stand as mere creditors of the estate.

4. The case is not affected by the existence of any fraudulent intent on the part of Mr. Averill in putting the stock in Mr. Dunham's hands. The defendants offered no evi-

dence of a judgment nor any evidence that Mr. Averill ever had any creditors. In his letter of instructions he says that "there are no *legal* claims whatever outstanding against me." He refers to the judgment as a defunct claim which must not be paid; that no demand has ever been made upon him for it; and that for more than twenty-five years he had been perfectly solvent. The court has found from the statements contained in the letter of instructions that Mr. Averill placed the stock in Mr. Dunham's name in order to conceal his interest in it. The court has not found fraud.

5. The submission and award were admissible in evidence in favor of the plaintiffs. That executors have the power to make a submission is established beyond controversy. *Alling* v. *Munson*, 2 Conn., 691; *Bean* v. *Farnum*, 6 Pick., 269; *Chadbourn* v. *Chadbourn*, 9 Allen, 173; Wms. on Exrs., 1800, 1801, and note; Schouler on Exrs., §§ 387, 389, and note; 1 Encycl. of Law, 658, note. The power given by Gen. Statutes, § 595, is only an affirmance of the common law. An award has the validity and effect of a judgment and concludes the parties to the controversy effectually from litigating the same matters anew. 1 Encycl. of Law, 711; *Strodes* v. *Patton*, 1 Brock., 228; *Wheatley* v. *Martin's Exr.*, 6 Leigh, 62; *Curley* v. *Dean*, 4 Conn., 259. Both parties to an award must be bound or neither, and so must all parties interested in the estate in case of a submission by an executor. If a person presents a claim to an executor and he allows it, or submits it to an arbitrator and its allowance makes the estate insolvent, other creditors are interested because thereby they lose a part of their claims. Can it be said they are not bound by the award? And if not, what is their remedy? If, on the other hand, it does not make the estate insolvent, but diminishes the assets and thus lessens the shares of the heirs or legatees, have they any remedy? In short, a submission by executors and an award binds not only the estate but the creditors, heirs at law and legatees; otherwise it is merely nugatory.

SEYMOUR, J.   It appears from the finding in this case that on and before August 14th, 1850, Austin Dunham owned twenty-one shares of the Ætna Life Insurance Company's stock, on which ten dollars a share had been paid. On or about that date he sold to, or subscribed or bought for, James R. Averill, eight shares of said stock and Averill paid him therefor ten dollars a share and took a receipt as follows, viz.:

"HARTFORD, Aug. 14, 1850.

"Received from James R. Averill eighty dollars, being the first installment on eight shares of the Ætna Life Insurance Company's stock standing in my name, but owned by him, and he remaining responsible for the balance of the installments when called in.     AUSTIN DUNHAM."

The object of Averill was to conceal his interest in the stock, and it continued standing in the name of Dunham on the books of the Ætna Life Insurance Company down to the time of his death.   There was nothing on the books of the company, or on the certificates of stock, or on the books of Dunham, or in any of his papers, to indicate that Averill had any claim or demand against any of the stock, and no notice was given to the insurance company that he had any interest in or claim to the same, and the stock was never separated from other stock owned by Dunham, but remained in Dunham's name with the knowledge and consent of Averill, who never made any demand for the delivery thereof.

Between August 14th, 1850, and February 25th, 1874, additional installments, amounting to fifty-eight per cent, were paid upon the stock, to wit, thirty per cent in dividends and twenty-eight per cent in cash, which cash was paid by Dunham and repaid to him by Averill.   On February 25th, 1874, the remaining thirty-two per cent was called in, and paid by Dunham, who then held fifty-eight shares.   He has since received from the insurance company, in cash dividends on the stock, enough to repay the thirty-two per cent installment so paid by him, and the same has been repaid in no other way.

About September 15th, 1875, Mr. Averill made his will

and named Wm. R. Cone, Roland Mather and Robert E. Day, the plaintiffs in this suit, as his executors.   About September 20th, 1875, he left Hartford, and has never returned or been heard from.   Just before leaving he delivered to said Robert E. Day a sealed envelope which contained his will and certain instructions to Messrs. Cone, Mather and Day written upon a separate paper.

September 30th, 1882, when the presumption of his death arising from his seven years' absence without having been seen or heard from was established, Averill's will was probated and his executors duly qualified.   An appeal was taken from the probate of the will, which was continued in the Superior Court until February 17th, 1885, when judgment was given for the appellees.   On March 3d, 1885, the executors of Averill made demand of the executors of Dunham for the eight shares of stock with the increment and dividends thereon, and they refused to deliver the same.

The instructions which were in the sealed envelope delivered to Robert E. Day and which had not been read by the parties to whom they were directed until about September 30th, 1882, contained what purported to be a list of Averill's securities, and among them the following item—" Also eight shares Ætna Life Insurance stock in name of Austin Dunham, on which $68 per share has been paid by *me*— worth $450 to $500 per share."

Austin Dunham died March 12th, 1877, leaving a will, which was proved March 19th, 1877, and the executors thereof qualified on the same day.   At his death fifty-eight shares of said insurance stock were standing in his name, including the eight shares claimed by the plaintiffs, and the defendants had no knowledge that any right or claim existed, or was claimed to exist, against said shares or any part thereof.

May 12th, 1877, the executors of Mr. Dunham filed an inventory of his estate in the court of probate, and included in it the whole of said fifty-eight shares of stock, and then claimed, and ever since have claimed, that the whole of said stock belonged to his estate absolutely.

The court of probate limited six months from March 19th, 1877, for the presentation of claims against the estate. No claim was presented within the time so limited, either by Averill or by any person acting for him, for the eight shares of stock or for any interest therein ; and no claim or demand was made, or notice of claim given, that Averill or his estate had any interest, right or claim in or to any of said stock or the dividends thereon, either to or upon Mr. Dunham's executors or to or upon any other person, until March 3d, 1885, when the plaintiffs notified the executors of Mr. Dunham of their claim in writing, and demanded a transfer to them of said stock, with payment of interest and dividends thereon, together with a proper account of the same ; which demand they refused to comply with.

November 18th, 1878, the Ætna Life Insurance Company made a stock dividend of four shares of increased stock for each share of original stock, so that the fifty-eight shares of stock in the hands of Mr. Dunham's executors were increased to two hundred and ninety shares. July 5th, 1879, and June 15th, 1882, Mr. Dunham's executors distributed these two hundred and ninety shares, under the provisions of the will, to and among the defendants. The distribution was made voluntarily and pursuant to the will without any order of distribution by the court of probate. Mr. Dunham's estate has not been settled. A large amount of property is still in the hands of his executors and no final account has been rendered by them. Since the distribution further stock dividends have been made by the insurance company which would increase the eight shares mentioned in the writing of August 14th, 1850, to sixty-six and two third shares.

After the refusal of the executors of Mr. Dunham to comply with the demand made upon them March 3d, 1885, by the executors of Averill, this suit was commenced, namely, on November 24th, 1886, against Mr. Dunham's executors and those to whom the stock had been distributed as hereinbefore stated. The Superior Court rendered a joint judgment against all the defendants ; that they deliver and transfer at once to the plaintiffs sixty-six shares of the capi-

tal stock of the Ætna Life Insurance Company, and also to pay to the plaintiffs the sum of $5,485.20, together with the further sum of $132.00, the same being the value of two thirds of one share of said stock, and all dividends which may hereafter be declared and paid on the above shares until the delivery thereof to the plaintiffs as adjudged, and their costs of suit; from which judgment an appeal is taken to this court.

Among the defendants' reasons for appeal are the following:—"Because the court held that the plaintiffs were not barred by their failure and the failure of their testator to present their claim against the estate of Austin Dunham within the time limited by the court of probate; and were not barred by their neglect and failure to bring their suit within the limitations of the statute; and because the court held that the plaintiffs' claim and suit were not barred by the statute of limitations, either general or special."

The pleadings raised these issues, they were ably argued by counsel, and inasmuch as, in our judgment, a correct decision of them is decisive of the case, we shall confine ourselves mainly to their consideration.

Do the statutes of limitation, relied upon by the defendants, defeat the plaintiffs' right of action?

This question requires, for its correct answer, a thorough examination of the character of the trust raised between the parties by the transaction of August 14th, 1850—a transaction which, the plaintiffs claim, raised an express, technical and continuing trust, not cognizable at law, but within the proper, peculiar and exclusive jurisdiction of a court of equity, and therefore not subject to the statutes of limitation; and which, the defendants claim, on the contrary, raised only an implied trust, cognizable at law, and therefore subject to the statutes of limitation.

Bouvier defines express trusts as those which are created in express terms in the deed, writing or will; and implied trusts as those which, without being expressed, are deducible from the nature of the transaction as matter of intent, or which are superinduced upon the transaction by operation

of law as matter of equity, independently of the particular intention of the parties; and adds that the term is used in this general sense, including constructive and resulting trusts, and also in a more restrictive sense, excluding those classes.

Perry, in the fourth edition of his work on Trusts, says:— " Trusts are divided into simple and special trusts. A simple trust is a simple conveyance of property to one upon trust for another, without further specifications or directions. In such case the law regulates the trust, and the *cestui que trust* has the right of possession and of disposing of the property, and he may call upon the trustee to execute such conveyances of the legal estate as are necessary. A special trust is where special and particular duties are pointed out to be performed by the trustee. In such cases he is not a mere passive agent, but he has active duties to perform, as where an estate is given to a person to sell and from the proceeds to pay the debts of the settlor." See vol. 1, sec. 18.

" Implied trusts are such as arise by operation of the law for the purpose of carrying out the presumed intention of the parties, or, without regard to the intention of the parties, for the purpose of asserting rights of parties or of frustrating fraud; they include the two classes of trusts known as resulting and constructive trusts." Am. & English Encyclopedia of Law, vol. 10, p. 2.

" In implied trusts, * * * instead of the idea of permanence, the substantial right of the beneficiary is that the trust should be ended by a conveyance of the legal title to himself. All trusts by operation of law consist, therefore, in a separation of the legal and equitable estates, one person holding the legal title for the benefit of the equitable owner, who is regarded in equity as the real owner, and who is entitled to be clothed with the legal title by a conveyance." 2 Pomeroy's Eq. Jur., sec. 603.

" As between trustee and *cestui que trust,* in the case of an express trust the statute of limitations has no application and no length of time is a bar. * * * It does not run until repudiation or adverse possession by the trustee and knowledge

thereof on the part of the *cestui que trust.*" 1 Perry on Trusts, sec. 863. All trusts arising by operation of law, whether implied, resulting or constructive, are subject to the statute of limitations. " To exempt a trust from the bar of the statute of limitations it must, first, be a direct trust; second, it must be of the kind belonging exclusively to the jurisdiction of a court of equity; and third, the question must arise between trustee and *cestui que trust.*" *Hayward* v. *Gunn*, 82 Ill., 385. " The statute of limitations is a good defense in equity as well as at law. When it does not by its terms apply to courts of equity they have adopted it by analogy to the defense at law, in all cases in which it would be a defense in courts of law. But it is no defense in matters of a purely equitable nature, and of which courts of equity have an exclusive jurisdiction. Trusts are held to be within this exception, being matters of pure equity jurisdiction. But this exception is confined to express and technical trusts, and not to such as arise by implication." *McClane's Admx.* v. *Shepherd's Executrix*, 21 N. Jer. Eq., 79.

In *Admr. of Allen* v. *Exrs. of Wooley*, 2 N. Jer. Eq., 209, (1 Green,) *A* executed a power of attorney to *W*, and thereby placed her whole property at the disposal of the attorney, with full power to collect her choses in action and to make sale of her goods and chattels, and, out of the principal as well as interest of the proceeds, to maintain and support her; with a special provision that *W* should account whenever required. A bill for an account was filed by *A's* administrator, to which, among other defenses, the statute of limitations was pleaded. Respecting this plea the chancellor says, in giving the opinion :—" As to the general principle on this subject there is no difficulty. It is well settled that no time can bar the claim in the case of a direct trust as between the trustee and *cestui que trust*. But whether this is a trust of such a character has created the doubt." He concludes however that the facts before him raise an express direct trust, and gives as the reasons for such conclusion that "the power of attorney placed the whole property of this woman at the disposal of her trus-

tee, not only her choses in action, but her goods and chattels, with full power to collect the one and sell the other, and out of the proceeds, as well principal as interest, to maintain and support her, and with a special provision that the trustee should account whenever required." "This," he says, "is unlike a delegated power conferred on a person for a single or limited object; it reached her entire property, related to her whole living, and, by its very terms, was a continuing fiduciary engagement. There would be no security if the statute might be pleaded in a case like this. It would defeat its very object. But (he adds) there is enough here, even if the statute did apply, to take this case out of its operation."

We need not discuss this point further. The difficulty is not with the rule which excludes express, continuing trusts from the operation of the statute of limitations and subjects implied trusts to its operation, but with its application, and we have cited somewhat freely from the authorities, not because we were in doubt about the existence or propriety of the rule, but to aid in its application.

This is in some respects a peculiar case. In most of the cases from which the principles applicable to it are extracted there are three parties to the transaction, namely, a settlor, a trustee, and a *cestui que trust.* Here the trust is created by the transactions between the trustee and the *cestui que trust.* Mr. Dunham owned twenty-one shares of stock. Of this Mr. Averill purchased eight shares, which, for reasons of his own, he did not want transferred to himself, but did want them to remain standing in the name of Mr. Dunham and ostensibly his. Hence arose the necessity of the writing of August 14th, 1850. If the stock had been regularly transferred upon receipt of the eighty dollars, of course the transferee would have been thereafter responsible for the balance of the installments when called in, and, the transaction being complete, no writing would have been needed. The writing was in the nature of a receipt to furnish evidence, not only of the payment of the eighty dollars, but also that, of the twenty-one shares of said stock standing in Mr. Dunham's

name, Mr. Averill was the owner of eight, having paid eighty dollars therefor and become responsible for the balance of the installments when called in. It contained no agreement as to the future disposition of the stock or the dividends therefrom ; that was left where the law left it. Mr. Dunham assumed no trust respecting such disposition other than that implied by the law upon the facts.

It seems certain, then, that the trust raised by the transaction of July 14th, 1850, was an implied one. It would have been terminated and the trustee discharged upon a delivery of the stock, with its increments and such dividends as had not been necessary to pay installments to Mr. Averill or his representative. The trustee had no other duty respecting it. Instead of the idea of permanency, the substantial right of the beneficiary was that the trust should be ended by a conveyance of the legal title to himself. It was a claim enforceable at law and subject to the statutes of limitation.

As already stated, Mr. Dunham died March 12th, 1877. His executors qualified March 19th, 1877. The court of probate limited six months from the latter date for the presentation of claims against his estate. No claim was presented by or in behalf of Mr. Averill or his estate until March 3d, 1885. In other words, the claim upon which this suit is based was first presented against Mr. Dunham's estate about seven and a half years after the expiration of the time limited by the court of probate for the presentation of claims, and nearly two and a half years after the executors of Mr. Averill's will had qualified. This suit was brought more than nine years after Mr. Dunham's decease.

If, as suggested by the plaintiffs, the law would excuse the failure to present the claim within the time limited by the court of probate when there was no one to present it, yet that excuse could not prevail here. There is no legal presumption that Mr. Averill died before September 20th, 1882; no presumption that he was not living when the time limited for the presentation of this claim expired. Then again, if the law would excuse a failure to present the claim until after the executors of Mr. Averill's will had qualified,

yet there is nothing in the fact that an appeal was taken to the Superior Court from the probate of his will to excuse the delay of two years and over before presenting it.

The failure to exhibit a claim within the time limited by the court of probate for the presentation of claims against a deceased person's estate, forever debars the demand. There is no provision for suspension during the disability of the claimant. It is a statutory bar which, to quote the language of Lewin in his work on Trusts, p. 866, affords a substantial, insuperable obstacle to the plaintiff's claim, and no plea of poverty, ignorance or mistake can be of any avail. However clear and indisputable the title, could the merits be inquired into, the limited time has elapsed and the door of justice has closed. The language of Judge STORY, quoted in the defendants' brief, suggests a reason for the strict application of the statute. He says this statute of limitations as to executors and administrators is not created for their own security or benefit, but for the security and benefit of the estates which they represent; it is a wholesome provision designed to produce a speedy settlement of estates and the repose of titles derived under persons who are dead. If it appears to work harshly in this case the law is nevertheless so that, whenever this statute comes in, it applies regardless of any hardships which it may work, and we must regard this claim as barred by the failure to present it against Mr. Dunham's estate within the time limited by the court of probate.

Again, and independent of the failure to present the claim within the time limited by the court of probate, the failure to commence suit upon it until November 24th, 1886, must be held to be a good defense. It would seem that Mr. Averill could have compelled Mr. Dunham to deliver to him eight shares of said stock immediately after his purchase, and could have had the same transferred to his name on the books of the insurance company, thus assuming with the company the responsibility for the payment of further assessments. The defendants claim that at any rate he could have so compelled Mr. Dunham and that the general statutes

of limitation began to run from the time when Mr. Dunham had been repaid, by cash and dividends, for the installments paid by him which made the stock full paid stock. This time, they say, appears from the finding to have been previous to Mr. Dunham's death, which was March 12th, 1877, more than nine years before this suit was brought. Upon the facts already recited we see no valid answer to this claim. Indeed, the decision that the trust, assumed by or imposed upon Mr. Dunham, was an implied instead of an express continuing trust, disposes of the claim that the statutes of limitation cannot be effectually pleaded, and, in connection with the disposition we make of the question arising upon the submission and award, is decisive of the case.

Soon after the demand of March 3d, 1885, the plaintiffs and the executors of Mr. Dunham entered into a written agreement to submit the matter in dispute, being the same matter involved in this suit, to arbitration, and agreed upon an arbitrator to whom the matter was referred. The arbitrator made and published his award. On the trial the plaintiffs offered this submission and award as evidence of title. The defendants objected on the ground, among others, that it purports to be a submission on the part of the executors, and by the executors only, and can have no bearing except so far as it affects the executors in any event; and that it purports to be a submission and award in June, 1886, long after the distribution of the stock to all of the parties, without any notice to them and without any authority on the part of the executors to bind them. The court overruled the objections and received the submission and award as tending to show in whom was the equitable title.

We think the court erred in overruling the objections. The award was offered as evidence against all the defendants. Several of them were not parties to it, and, so far as appears, in nowise authorized it or ratified it. It could not therefore affect them so far as any question of title was in issue in this suit. If it could affect the executors and through them the estate, it could only affect the other de-

fendants indirectly by diminishing the assets of the estate. It was no foundation for the judgment against the defendants jointly that they deliver and transfer at once to the plaintiffs sixty-six shares of the capital stock of the company and make further payments as therein provided—a judgment which proceeded upon the ground, of course, that the equitable title to said sixty-six shares was in Mr. Averill's executors, and which was influenced by the award, which was admitted in evidence. In the way and for the purpose for which it was offered the submission and award were not admissible evidence. It nowhere appears from the finding that objection was made in the Superior Court to the admissibility of the award in evidence upon the ground that the executors of Mr. Dunham had no power, either directly or indirectly, by submitting a stale claim to arbitration, to waive the bar of the statute of limitations. The court below was not called upon to consider that question, and it is therefore not before us, though alluded to in the defendants' brief.

There is error in the judgment appealed from, and it is reversed.

In this opinion the other judges concurred.