**56**

Alice H. COOK, Daniel A. Cook, and Eunice Cook Marshall, Plaintiffs-Appellants,

v.

William S. HIRSCHBERG, The Greenwich Trust Co., and Grace Hornby Philbrick, as Executors of the Estate of Joseph M. Philbrick, late of the Town of Greenwich, State of Connecticut, Deceased, and Grace Hornby Philbrick, Individually, Defendants-Appellees.

No. 379, Docket 25009.

United States Court of Appeals
Second Circuit.

Argued June 10, 1958.

Decided Aug. 6, 1958.

Robert E. Nickerson, of Ivey, Barnum, O'Mara & Nickerson, Greenwich, Conn. (Robert C. Barnum, Jr., and Norman E. Davis, of Ivey, Barnum, O'Mara & Nickerson, Greenwich, Conn., on the brief), for plaintiffs-appellants.

C. Driscoll Grimes, of Hirschberg, Pettengill & Strong, Greenwich, Conn. (Jack Haldane Courage and John F.

Lambert, of Hirschberg, Pettengill & Strong, Greenwich, Conn., on the brief), for defendants-appellees.

Before CLARK, Chief Judge, MOORE, Circuit Judge, and RYAN, District Judge.

CLARK, Chief Judge.

This is an appeal from Judge Smith's dismissal upon defendants' motion of a claim based upon an alleged oral contract between husband and wife for the making of mutual wills alleged to have been breached by the defendants' testator, the husband. The plaintiffs are a nephew and two nieces of Amelia B. C. Philbrick, first wife of Joseph M. Philbrick, to whom she was married apparently before 1911 and at least before her will of September 27, 1923, hereinafter discussed. She died on March 29, 1931, and under her will about $246,830.96 was distributed to Joseph, who on June 10, 1932, married Grace Hornby Philbrick, one of the defendants. Joseph died on September 16, 1955; and his will, of which the three defendants are executors, left the greater part of his estate to Grace. The complaint in its allegations of contract is extremely general and says only in its paragraph 9 that Amelia and Joseph at some unspecified time "entered into an agreement whereby each, in consideration of the promise of the other, promised to leave the other the principal part of his or her estate, the survivor of them to leave to the Plaintiffs herein no less than fifty (50%) per cent of the survivor's estate, excluding therefrom, however, certain lesser gifts as set forth in" Amelia's will of September 27, 1923, attached to the complaint as an exhibit, and Joseph's will of May 9, 1928, also attached as an exhibit. Also attached as exhibits to show the violation of the agreement were Joseph's last will of November 3, 1952, and codicil of February 8, 1954, which were probated. On the basis of these meager details the court was asked to grant specific performance of the alleged agreement.

The defendants moved to dismiss the complaint for failure to state a claim upon which relief could be granted and supported this by two affidavits. One of these by a title searcher showed that Amelia owned real estate in Greenwich from 1911 until her death in 1931 and that Joseph also owned real estate there from May 7, 1928, until 1936 and again from 1953 until his death. The other affidavit by an officer of The Greenwich Trust Company, a defendant executor, showed that the plaintiffs presented no claim to the executors within the six months' time limited by the Probate Court for the District of Greenwich for the presentation of claims against the estate. In their motion the defendants asserted several defenses: that the alleged contract was one not susceptible of enforcement by specific performance; that because the parties owned real estate the agreement did not satisfy the Statute of Frauds; and that the claim was barred for failure to present it in time. In a reasoned decision Judge Smith sustained the first two grounds, while rejecting the third.

We are quite clear that Judge Smith's decision was correct, although our approach is somewhat different. We agree with him as to the vagueness and indefiniteness of the contract; but at this stage of the case we are less confident than he of the defense of the Statute of Frauds, Conn.Gen.Stat. § 8293 (1949), and more confident than he of the defense based on the Connecticut Statute of Nonclaim, Conn.Gen.Stat. § 6990 (1949). Plaintiffs assert that the latter defense is no longer open to defendants, since they took no cross appeal. This is of course nonsense; appeals have to be taken from final judgments, not from judicial rationales. And court judgments may of course be supported by any sound judicial argumentation—or by none at all if they are correct legally. Judges have at least the solace of knowing that only judicial deeds—not judicial words—may constitute legal error.

Plaintiffs contend that, as against a motion to dismiss, the complaint should be liberally construed in favor of the pleader. But defendants'

filing of affidavits with their motion essentially converted it into a motion for summary judgment, F.R. 12(b), and placed upon plaintiffs an obligation to disclose the merits of their case. Engl v. Aetna Life Ins. Co., 2 Cir., 139 F.2d 469; William J. Kelly Co. v. RFC, 1 Cir., 172 F.2d 865; Clark, Code Pleading 566 (2d Ed. 1947). This obligation plaintiffs failed to fulfill.

■ Moreover, plaintiffs' case as revealed on the motion below evidences weaknesses which cannot be cured by mere presumptions in favor of sustaining a complaint. Plaintiffs admittedly have no writing to prove their contract, but depend upon oral admissions by the testator made apparently before some aged witnesses. As straw for the dubious bricks they are making, plaintiffs seek to rely on the two wills attached as exhibits to the complaint. Unfortunately these exhibits piece out the complaint's allegations only most superficially and doubtfully. Amelia's will of 1923 consists of eight articles, with specific gifts for various legatees, including the three plaintiffs, followed by a gift of the residue to Joseph; but if he die before her, then there are a further series of specific and trust gifts to various legatees, with the residue made subject to a trust, of which each of the plaintiffs is given a beneficial interest in a one-fifth part. Because of its complexity, the will does not readily fit into the simple framework of the contract set out in paragraph 9 of the complaint. And the problem becomes even more hopelessly involved when Joseph's later will is compared with Amelia's. Joseph's will—executed four and one half years after Amelia's—is offered by plaintiffs to show his awareness of and compliance with the alleged bargain. It does not. The will is a long document of eighteen major articles and many numbered or lettered subdivisions. It provides first that everything shall go to Amelia if she survives. If she does not, then there are many specific gifts and trusts to individuals or churches or other charities. Ultimately the residue is given in trust, divided into six parts, of which each of the three plaintiffs is given a beneficial interest in one part.

From this will alone it would be difficult to define or isolate the "certain lesser gifts" which by paragraph 9 of the complaint are to be deducted before the plaintiffs share in the survivor's estate. But the task of reconstruction becomes impossible, in view of the quite diverse scheme and plan and legatees of each, if an attempt be made to distill from the two wills a single mutual intent on the part of husband and wife. Indeed the very diversity quite negatives the existence of any such intent. The situation is not aided by contemplation of the series of events wherein it appears that Joseph married a second wife, with whom he lived for nearly a quarter century until he died, at which time he not unnaturally made her the principal object of his bounty. His last will, too, contains many specific bequests or trusts, including gifts of $5,000 each to the plaintiffs. There is certainly nothing unnatural or surprising in all this, and the attempts to spell out a meaningful contract seem impossible of success. Nor does any clear basis for a *quantum meruit* recovery appear, so indefinite is the plaintiffs' own conception of the contract upon which they rely to bring the Cook money back to their side of the family.

Hence we agree that there was no enforceable right here set forth. Were we wrong in this view, however, we should hesitate to rule against plaintiffs at this time on the issue of the Statute of Frauds. There are many precedents for part performance satisfying the statute where one party to an oral contract for mutual wills dies leaving to the other party that portion of the estate allegedly subject to the contract. See, e. g., the cases cited in 2 Corbin on Contracts § 440, n. 5 (1950) and in the 1957 Supplement. Moreover, it is doubtful at this time whether any part of the estate properly subject to satisfying this 50 per cent claim is real estate. Such real estate as the testator had come to own at his death was specifically given to his then wife in his codicil in 1954 and hence would be

the last subject to claims such as this, which would come first out of the personal property not specifically bequeathed. Duffield v. Pike, 71 Conn. 521, 529, 42 A. 641, 645; Cleaveland, Hewitt & Clark, Probate Law and Practice of Connecticut 673–678 (1915); and see Conn.Gen.Stat. §§ 6953, 6969 (1949). Hence specific resolution of this point cannot be made definitely at this stage of the action.

■ But we are convinced that failure to present the claim within the time legally limited is a complete bar under the Connecticut precedents. The plaintiffs' answer—which Judge Smith did accept—that this is a claim for an equitable remedy, namely, specific performance, is altogether too easy a way of getting around a specific statutory bar. The statute, Conn.Gen.Stat. § 6990 (1949), refers broadly to "claims against such estate";[1] and this is held to include claims founded in tort as well as contract. The Connecticut Supreme Court of Errors has rejected any narrow meaning of claim, and has held that it refers to "those obligations which are, in the broad sense of the term, debts" and that "[b]roadly, a debt may be defined rather as what one owes to another." Sherwood v. City of Bridgeport, 123 Conn. 348, 351, 195 A. 744, 745.

The court has held, however, that claims for the recovery of specific interests in property, as for trust property, need not be presented; and it is this exceptional situation to which the plaintiffs would assimilate their claim. But it is quite clear that they are pressing it too far and that the bar cannot be lifted by the mere device of asking for specific performance. The cases are summarized, and the distinction made clear, in the court's latest expression in Padula v. Padula, 138 Conn. 102, 107, 82 A.2d 362, 364–365. Justice Inglis pointed out that a claim in *quantum meruit* for services

rendered in reliance upon an unenforceable contract to leave property by will must be presented, Grant v. Grant, 63 Conn. 530, 29 A. 15, as must also a demand for specific performance of an obligation to transfer stock unsegregated from the decedent's total holdings in that corporation. Cone v. Dunham, 59 Conn. 145, 20 A. 311, 8 L.R.A. 647. "On the other hand the presentation of a claim to an administrator is not a prerequisite to the impressing of an express trust upon the trust *res* which he has in his possession. McDonald v. Hartford Trust Co., 104 Conn. 169, 189, 132 A. 902; Connecticut Trust & Safe Deposit Co. v. Security Co., 67 Conn. 438, 443, 35 A. 342." The same is true as to an interest in real property by way of mortgage, although the right to recover on the mortgage note is barred unless a claim has been presented. Beard's Appeal, 78 Conn. 481, 62 A. 704.

Having thus analyzed earlier cases, the Justice continued: "The distinction between these two lines of cases is clear. Those cases cited above and others in our reports which hold that the presentation of a claim is essential involve claims which are the personal obligation of the decedent. In those cases in which the cause of action is for the recovery of or the determination of interests in specific property and therefore is at least *quasi in rem* and not *in personam*, it is not an essential prerequisite that a claim be presented. In other words the purpose of the Statute of Nonclaim is to make sure that an administrator is informed as to what claims there are which must be paid out of the estate as a whole. It is not to apprise him of what of the apparent property of his decedent is to be inventoried or what incumbrances, if any, are on that property." And so the opinion allows the plaintiffs in possession, and claiming to own a farm, to sue without

---

1. "The court of probate may order executors and administrators to cite the creditors of the deceased whose estate is in settlement before it to bring in their claims against such estate within such time as it shall limit, not more than twelve months nor less than six months, * * * and, if any creditor shall fail to exhibit his claim within such time as may be limited by such order, he shall be barred of his demand against such estate; * * *." Conn.Gen.Stat. § 6990 (1949).

presentation of a claim to clear the title to the property of a cloud by reason of a fraudulent conveyance obtained from the decedent.

On the other hand it is difficult to conceive any claim more "the personal obligation of the decedent" than one such as this before us, calling for the transfer of over half the entire estate, starting with the cash and personal property, as we have noted above. The very purpose of this "wholesome provision designed to produce a speedy settlement of estates, and the repose of titles derived under persons who are dead," Cone v. Dunham, supra, 59 Conn. 145, 20 A. 311, 314, 8 L.R.A. 647, quoting from Story, would be frustrated if all the fund for paying debts and legacies might be subject to indefinite claims of this nature exhibited years after an estate has been apparently settled. We have suggested above reasons why we think specific performance not an available remedy here. But in any event as we read the Connecticut precedents the mere form of remedy requested cannot control so important a statutory provision as this. It must be the nature of the debt or obligation; here both the legal principles and the practicalities of the situation require that the claim must have been "exhibited" to the executors within six months from September 26, 1955. As it was not, it is totally barred.

Judgment affirmed.

MOORE, Circuit Judge (concurring).

Although I concur in the result, I do not agree with portions of the majority opinion.

The motion to dismiss the complaint for failure to state a claim (Rule 12(b) (6)) was made on August 19, 1957. The motion was not made upon affidavits and no affidavits addressed to the complaint were ever presented.

On the day of argument of the motion (October 14, 1957) two affidavits, both sworn to on October 10, 1957, were submitted to the District Court. Nothing in either of them attempts to establish facts contradicting the material allegations of the complaint. The first merely recites recording data contained in the Land Records of the Town of Greenwich which revealed that when Amelia Philbrick died, both she and her husband owned real property, and that her husband continued to own such property until his death. The second states that no claim by these plaintiffs was presented within the time limitation contained in the Connecticut Nonclaim Statutes. The plaintiffs did not dispute the veracity of the affidavits, but contended that the facts set forth therein were legally insufficient to sustain the affirmative defenses.

The only conceivable purpose of these two affidavits was to support the affirmative defenses. Yet the majority would appear to hold that the filing of affidavits relating solely to the affirmative defenses by the party who has the burden of sustaining these affirmative defenses and which contain no facts tending to controvert the allegations of the complaint "placed upon plaintiffs an obligation to disclose the merits of their case."

Giving the most liberal construction to the motion, it was: first, a motion to dismiss the complaint for legal insufficiency; second, a motion to dismiss on the grounds that the complaint on its face revealed that the action was barred by the affirmative defenses of the statute of frauds and of the Connecticut Statute of Nonclaim.

The burden was on the plaintiffs to file a complaint sufficient to state a cause of action and sufficient to withstand attack by way of affirmative defense. This plaintiffs failed to do.

I agree with Judge Smith's conclusions that the claim is too indefinite and uncertain for specific performance and that the part performance alleged is "insufficient to take the case out of the reach of the statute of frauds."

I also agree with Judge Smith that "the statute of nonclaim does not bar this action so far as it may seek specific performance or to impress a trust on the proceeds of the wife's transfer to the

husband." The statute specifically authorizes executors and administrators "to cite the creditors of the deceased" and "if any creditor shall fail to exhibit his claim" he shall be barred. The plaintiffs here, in my opinion, were not within that category.