Abraham Levy, Plaintiff in Error, v. Marie Kuss, Administratrix of Estate of John O. Kuss, Deceased, and Woodlawn Trust and Savings Bank, Defendants in Error.

### Gen. No. 24,967.

1. EXECUTORS AND ADMINISTRATORS, § 326*—*when claim is to be paid as of sixth class.* Where an intestate contractor had received a cashier's check from complainant for the sole purpose of paying subcontractors, but never paid them and deposited the money to his account, the proceeds of the check are a claim against the deceased's general estate and will be paid out only as a claim of the sixth class, under the Administration Act, sec. 70, ch. 3 (J. & A. ¶ 119), providing for a division of demands against an estate into classes and will be paid out posterior to the first five claims provided for in the statute.

2. EXECUTORS AND ADMINISTRATORS, § 274*—*what relief will be afforded on claim against estate.* Whatever procedure a *cestui que trust* or a creditor adopts to recover a claim against a deceased's estate, whether that of a court of equity or the probate court, the nature and quantity of the relief will be the same.

3. EXECUTORS AND ADMINISTRATORS, § 322*—*what is effect of statute as to classification of claims.* The Administration Act, sec. 70 (J. & A. ¶ 119), providing that "all demands against the estate of any testator or intestate shall be divided into classes," constitutes a change in the substantive law and is therefore as much the law in an equity proceeding as in a proceeding in the probate court.

4. EXECUTORS AND ADMINISTRATORS, § 326*—*when claim is of

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

*sixth class.* Money in trust which a deceased has received is obtainable from his estate only after provision has been made for the payment of claims which fall within the first five classes of section 70 of the Administration Act (J. & A. ¶ 119).

Error to the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1919. Affirmed. Opinion filed October 6, 1920.

G. A. BURESH, for plaintiff in error.

No appearance for defendants in error.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

This cause was tried before the chancellor upon an agreed statement of facts, which contains substantially the following:

In April, 1913, John O. Kuss (now deceased) entered into a verbal (*sic*) contract with the complainant, by which it was agreed that Kuss was to build an addition to a store building belonging to the complainant and was to furnish and pay for the erection of said addition and pay for the material and labor and to be paid therefor by the complainant the sum of $1,600.

Kuss went to work, made agreements and contracts with divers subcontractors and laborers for the material and labor necessary to build an addition and perform the contract and pursuant to the various agreements which Kuss made with the subcontractors, materialmen and laborers, the following contractors, materialmen and laborers, among others, delivered bricklaying and plastering material and rendered services to the building prior to May 5, 1913, for which no payment has been made:

Farr Brothers ..........................$335.55

| | |
|---|---|
| J. B. Boulton | 424.45 |
| F. M. Aldridge | 65.85 |
| Standard Material Company | 46.15 |

$872.00

On May 5, 1913, Kuss asked the complainant for $1,000 "for the specific purpose and sole use of paying off the said bricklayers and plasterers for the material and labor furnished by them as per their said contracts" with the said Kuss, and the latter thereupon wrote and delivered to the complainant on May 5, 1913, a certain writing substantially as follows: "Could you please let me have a $1,000 on the building, as I want to pay off the bricklayers and plasterers. You can either give him a check or come yourself, as I am not able to be up, and charge the amount to my contract price."

On May 6, 1913, Levy received a cashier's check for $1,000 and on the same day delivered it to Kuss. The cashier's check recited, among other things, as follows: "Pay to the order of John O. Kuss (for payment on building at 9239 Cottage Grove Ave.), $1,000." Kuss indorsed the check and had it deposited to his own account at the Woodlawn Trust and Savings Bank. On May 6, 1913, just prior to the deposit of the cashier's check, Kuss had to his credit in the Woodlawn Trust and Savings Bank, $321.66, and after the deposit the sum of $1,321.66. On May 15, 1913, Kuss died and at the time of his death had to his credit in the Woodlawn Trust and Savings Bank the sum of $1,076.56. He had made no deposit subsequent to that of $1,000 but he had drawn out $255.10, leaving $1066.56.

Prior to his death Kuss did not use any part of the proceeds of the cashier's check of $1,000 in payment of material or work furnished to the building of the complainant, although at the time of his death there was due $872. Subsequent to the death of Kuss the

bricklayers and plasterers together with all the other subcontractors refused to complete their subcontracts until they were paid and threatened to file lien claims and foreclose them.    Several of them did file lien claims against the building and lot and the remainder refused to waive or release their claims.    The complainant on account of the threats of the said contractors to file lien claims and in order to protect his property from foreclosure was compelled to and did pay to Farr Brothers $335.55 and to the Standard Material Company $46.15, being a total of $381.70; there then remained due and unpaid to the bricklayers and plasterers amounts as follows: To Boulton $424.45 and Aldridge $65.85, being a total of $490.30 for material and labor furnished on the building.    To other subcontractors the complainant has paid for material and labor the sum of $616.35.    On May 21, 1913, Marie Kuss, the widow of the said John O. Kuss, deceased, was appointed by the probate court of Cook county as administratrix of the estate of said Kuss, deceased. The estate of Kuss is insolvent and its assets insufficient to pay the court costs, expenses of administration, and the widow's award.

The administratrix claims that the $1,000, the proceeds of the cashier's check now on deposit in the Woodlawn Trust and Savings Bank, is part of the assets of the estate of Kuss, deceased.

The agreed statement of fact further recites that the cashier's check for $1,000 delivered by the complainant to Kuss on May 6, 1913, "was for the sole and specific purpose of having the proceeds thereof used for paying the bricklayers and plasterers the money due them for material delivered and work and labor performed upon the said building of the complainant which at that time amounted to $872"; that complainant paid a total of $381.70 to protect his property from lien claims and foreclosure and that the sum of $493.30 is still due and owing to Boulton and

Aldridge, bricklayers and plasterers, who are now asking to collect that amount from the complainant.

The chancellor after considering the pleadings and the statement of facts decreed that the complainant be subrogated to all the rights and remedies of the subcontractors in and to the trust fund deposited in the Woodlawn Trust and Savings Bank to the extent of $872, and that Marie Kuss, the administratrix, pay to the complainant that sum, as a claim of the sixth class against the estate of John O. Kuss, deceased, in the probate court of Cook county. From that decree the complainant has prosecuted a writ of error.

No brief has been filed by the defendant. It is claimed by the complainant (1) that the payment should have been directed out of the fund in the bank and not as a claim against the estate, and (2) that interest should have been allowed.

(1) Did the chancellor err in remitting the complainant to the probate court, giving him only a remedy against the general estate of the deceased? In other words, having found that the sum of $872 which came to Kuss on May 5, 1913, was "for the specific purpose and sole use of paying off the said bricklayers and plasterers" and that "the deposit of Kuss in the Woodlawn Trust & Savings Bank, was and is a trust fund" in its hands "for the payment of said bricklayers and plasterers," and the complainant having filed his bill of complaint praying that the alleged trust fund be turned over to him, did the chancellor err in refusing the complainant the relief for which he prayed and relegating him to a claim of the sixth class in the probate court? At first blush, the claim of the complainant as stated in *Gillett v. Hickling*, 16 Ill. App. 392, that "the bill does not ask to enforce a claim against said estate and is not within the rules applicable to the presentation and allowance of claims against the estates of deceased persons in the probate court," seems quite plausible. But, section 70, chap-

ter 3 of the Administration Act (J. & A. ¶ 119), provides that, "All demands against the estate of any testator or intestate shall be divided into classes," etc., and that "where the deceased has received money in trust for any purpose, his executor or administrator shall pay out of his estate the amount thus received and not accounted for" as a claim of the sixth class, and it is our opinion that the words, "where the deceased has received money in trust for any purpose," apply to the proceeds of the draft which were credited to Kuss, the deceased, and mean that all such money when paid out, whether in answer to a bill in equity or a claim in the probate court, shall be paid out only as a claim of the sixth class, that is, shall be paid out posterior to the first five claims provided for in section 70.

The act in regard to the administration of estates, which went into force July 1, 1872, in so far as, in section 70, it is provided that "all demands against the estate of any testator or intestate shall be divided into classes," etc., constitutes a change in the substantive law and is, therefore, as much the law in proceeding in equity as in a proceeding in the probate court. Whatever procedure a *cestui que trust* or a creditor adopts, whether that of a court of equity or the probate court, can make no difference as to the nature and quantity of the relief which he may obtain. Money in trust which the deceased has received is obtainable from his estate only after provision has been made for the payment of claims which fall within the first five classes of section 70 of the Administration Act. Were it not so there would be one law in a court of equity and another law in the probate court.

Finding no error in the record the judgment of the superior court is affirmed.

*Affirmed.*

O'CONNOR and THOMSON, JJ., concur.