302    APPELLATE COURTS OF ILLINOIS.

Chicago Title & T. Co. v. Merchants Loan & T. Co., 244 Ill. App. 302.

Chicago Title & Trust Company, Executor of the Last Will of Ernest V. Johnson, Deceased, Appellant, v. Merchants Loan & Trust Company, Executor of the Last Will of William Grace, Deceased, Appellee.

## Gen. No. 31,265.

1. CONTRACTS—*when agreement for transfer of stock is absolute and not as security.* Agreements for the transfer of certain corporate stock ''in full payment and satisfaction'' of a debt due from the transferor to the transferee held not so ambiguous and uncertain, in view of the language of the instruments, the circumstances of their execution and the practical construction placed thereon by the parties, as to warrant the court in holding that the transfer was not intended to be absolute but was merely to secure the payment of the debt.

2. CONTRACTS—*conduct of parties as showing intention to make transfer absolute and not as security.* Where a controlling stockholder transfers certain shares ''in full payment and satisfaction'' of the transferee's claim to a share in the profits under a previous agreement between them and causes a certificate for such shares to be issued in the transferee's name and later thereon, after the transferee's claim has been satisfied, issues to the transferee a written statement which recognizes the latter's ownership, the practical construction thus placed upon the transfer by the parties shows their intention to have been that it should be absolute, and not by way of security.

3. CONTRACTS—*aids to construction.* In construing a contract the court may not only consider the circumstances surrounding the parties and the object had in view, but also the interpretation placed upon it by the parties in their performance of it.

4. EVIDENCE—*weight to be given evidence as to admissions by testator.* The evidence of a former employee of plaintiff's testator, that defendant's testator shortly before his death said that he would at a proper time turn back to plaintiff's testator stock which stood in his name and which he had received in exchange for acknowledged rights to business profits, is entitled to little weight.

5. ESTATES OF DECEDENTS—*effect of failure to file claim in time.* Under Cahill's St. ch. 3, ¶ 71, the failure to make any claim to corporation stock standing in the name of defendant's testator and inventoried as part of the assets of his estate or to file any suit for its recovery until nearly three years after letters testamentary were issued to the defendant, debars plaintiff from the right to make such claim.

Chicago Title & T. Co. v. Merchants Loan & T. Co., 244 Ill. App. 302.

Appeal by plaintiff from the Circuit Court of Cook county; the Hon. IRA J. RYNER, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1926. Affirmed. Opinion filed May 17, 1927.

JOHN F. VOIGT, for appellant.

WILLIAM C. ASAY and WALLACE STREETER, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

On October 23, 1924, complainant, as executor of the last will of Ernest V. Johnson, deceased, filed its bill against defendant, as executor of the last will of William Grace, deceased, praying that it, as executor of Johnson's will, be declared to be the true and lawful owner of 83 shares of the capital stock of the E. V. Johnson Company, an Illinois corporation, standing in the name of said Grace, and that defendant, as executor of Grace's will, having the possession of the certificate for the stock, be required to assign and surrender the same to complainant. After answer and replication had been filed the cause was referred to a master to take testimony and report his conclusions. Considerable evidence, oral and documentary, was introduced, resulting in the master filing a report in which he found that Grace in his lifetime held said certificate of stock as a trustee "as security against loss by him"; that defendant now holds the same without any right whatever in equity; that it belongs to complainant and that defendant should be required to assign and surrender it. On the hearing before the chancellor certain exceptions to the master's report were sustained, and, on May 12, 1926, a decree was entered, overruling the master's report and dismissing complainant's bill for want of equity, which decree it is sought by this appeal to reverse.

Ernest V. Johnson, who died testate at Chicago, Illinois, on April 29, 1924, was, during the year 1918, and prior thereto, engaged in business in Chicago under his own name, furnishing fireproof construction for buildings in that city and elsewhere. William Grace also was a contractor and builder and he and Johnson were friends. Being in need of additional money to carry on his business Johnson applied to Grace for assistance and Grace loaned him $20,000, which money was obtained by Grace's signing or indorsing three notes aggregating that sum and discounting them at a Chicago bank. To secure Grace against his liability on these discounted notes Johnson and wife executed and delivered their two notes, aggregating $20,000, and severally secured by certain trust deeds and two life insurance policies. As a special inducement to Grace to discount the first-mentioned notes and loan $20,000 to Johnson, the latter verbally agreed to pay to Grace "one-third of all profits" which would accrue to him (Johnson) on account of the construction work then being carried on by him. About December 1, 1918, Johnson caused to be organized the E. V. Johnson Company, an Illinois corporation, with an authorized capital stock of $50,000, divided into shares of $100 each, of which $25,000 had been fully paid and issued, viz, 248 shares to Johnson, 1 share to Walter E. Maas, an employee of Johnson, and 1 share to John T. Richards, a Chicago lawyer. All of the assets of Johnson's construction business were turned over to the corporation and it thereafter carried on said business in its name. Grace demanded that his one-third of the profits be secured to him. As a result of this demand two agreements, introduced in evidence as Exhibits A and B, dated February 17, 1919, were executed—one between Johnson and Grace, and the other between Grace and the corporation.

In said Exhibit A it is recited that Grace "has heretofore made sundry advances" to Johnson to aid him

in the carrying out of his building construction work "under an agreement that Grace should share in the profits arising from such building operations," and that "all uncompleted contracts so undertaken by Johnson have been transferred and assigned to the E. V. Johnson Co., and Johnson desires to secure to Grace his interest in the profits which have resulted or may result from said advancements." It then is provided that, in consideration of the premises, Johnson "agrees to transfer" to Grace "83 shares of the capital stock of said E. V. Johnson Co.," now standing in Johnson's name, "which said shares of stock, when so assigned, shall be *in full payment and satisfaction* of the claims" of Grace against Johnson, personally, "for his (Grace's) share of the profits growing out of the building operations herein mentioned, it being mutually understood and agreed that all dividends, which shall be declared upon said 83 shares of capital stock, shall be paid" to Grace, his heirs or assigns. It is further provided that Grace will not sell said 83 shares to any person other than Johnson without first giving Johnson a 30-day option to purchase them at a price equivalent to any price which may be offered by any other person; that Johnson will not prevent at any time the declaration of dividends on the capital stock of the Johnson Company out of its net earnings without Grace's consent; and that Johnson will not sell his remaining shares of the capital stock of the company without first giving to Grace a 30-day option to purchase the same at such bona fide price as any other person may offer therefor.

In said Exhibit B it is recited that Grace "has heretofore loaned and advanced to E. V. Johnson, president of the E. V. Johnson Co., the sum of $20,000, the payment of which has seen secured as hereinafter stated, that is to say" (certain securities then are mentioned). It is further recited that said sum of $20,000, so obtained by Johnson from Grace, "or property pur-

chased by said E. V. Johnson therewith, has been paid over by said E. V. Johnson in payment for capital stock" of the Johnson Company, and that said *Johnson Company* "is desirous of obtaining the assistance" of Grace "in the promotion of its business." It then is provided that Grace "hereby agrees to extend the time of payment of said sum of $20,000 to October 1, 1920, and to grant to said E. V. Johnson the privilege of the prepayment of the same or any part thereof"; that the *Johnson Company* agrees, "in consideration thereof and of the services to be rendered" by Grace to the Company, to pay to Grace "the sum of $200 per month, salary, beginning with the first day of March, 1919, *continuing until said sum of $20,000 shall have been fully paid,*—such payments (of salary) to be made on or before the 10th day of each and every month during said period"; that, in consideration of the payment of said salary to Grace by the company, Grace agrees to aid the company in securing contracts from time to time, in so far as he may consistently do so without interfering with his own business and at his discretion; that the Johnson Company further agrees that, until said indebtedness of Johnson to Grace shall have been paid, it will not pay to Johnson, as its president, a salary in excess of $300 per month, and that the company will furnish to Grace, on the 1st day of each and every month, a statement in detail showing all its receipts and disbursements, together with all its outstanding obligations, work in process of construction, etc.; and that this contract shall continue in force until all sums of money, owing by the company or by Johnson to Grace, shall be fully paid, etc. A third agreement, Exhibit C, executed about the same time between Grace and Johnson, declares that the $20,000 mentioned in Exhibit B "is the same $20,000" which Grace loaned to Johnson and which he (Grace) obtained for that purpose from the Chicago bank by his discounting said notes.

When said agreements were executed, John T. Richards was Johnson's attorney, and William A. Bither was Grace's attorney. Both testified as to the circumstances of the drafting and execution of the agreements. Richards testified that he had a number of conferences with Johnson regarding the drafting of Exhibits A and B, at some of which Grace was present; that he made a draft of an agreement which contained a provision that "when all obligations upon which Grace was or should become liable had been paid, the 83 shares of capital stock *should be returned to Johnson*"; that Grace and Johnson took away copies of the draft in order that Bither might be consulted; that he (Richards) never saw said copies again, nor did he see Exhibit A, until after it had been executed by both Grace and Johnson, "with the paragraph relating to the return of the stock *eliminated*"; and that when he found that that clause had been eliminated he was "very much surprised." Bither's testimony is to the effect that the first draft of Exhibit A, prepared by Richards, was submitted to him by Grace and Johnson, that after conferences and discussion with them he made a new draft, with said clause relating to the return of said stock to Johnson eliminated, and that duplicate copies thereof afterwards were signed by both Grace and Johnson, in final form as Exhibit A, introduced in evidence. It thus appears that an important clause of the agreement between Johnson and Grace, viz, that Johnson was to transfer the 83 shares of stock to Grace, and upon this being done the same should be *"in full payment and satisfaction"* of Grace's claim for his share of the profits mentioned, was incorporated in the agreement, *after full discussion* and not through error or inadvertence.

Thereafter Johnson, in accordance with his agreement contained in Exhibit A, transferred 83 shares of his holdings of stock in the Johnson Company (about one-third thereof) to Grace, and the latter held these

308    APPELLATE COURTS OF ILLINOIS.

Chicago Title & T. Co. v. Merchants Loan & T. Co., 244 Ill. App. 302.

shares continuously until his death, which occurred on November 6, 1921. The three notes which Grace had discounted at the Chicago bank, and upon which he was liable individually as maker or indorser, were all paid by others than himself, and canceled, by January 15, 1921, and all securities, trust deeds, insurance policies, etc., which had been given to protect him as against his liability on said three notes, were released, canceled or surrendered to Johnson. Up to this time, *and not thereafter,* Grace was paid by the Johnson Company the monthly salary of $200—$4,600 in all. No dividends up to this time had been declared by the Johnson Company on its capital stock and no "profits" (except on the so-called "Blatt" contract, made and completed before the agreements, Exhibits A and B, were executed) were received by Grace by way of dividends or otherwise from the Johnson Company, although it appeared that it had made profits, not as large as expected, on contracts for construction work which it had obtained and had carried out. On January 22, 1921, Johnson, individually, caused to be mailed to Grace a full statement (introduced in evidence as defendant's Exhibit 14) showing the total amount which Grace had received through Johnson, by reason of the various dealings and transactions, including the "Blatt" contract. This statement was contained in a letter, signed "E. V. Johnson," in which is written "also find enclosed statement of notes and interest paid on account of the $20,000 loan which I made from you in 1917, together with a summary of accounts on this transaction to date, all of which is submitted for your *favorable* consideration." In this statement is set down as "profit to Wm. Grace" the total sum of $15,577.50, of which two items which make up that total sum are: (a) "Salary paid to Wm. Grace for 23 months, $4,600," and (b) *"E. V. Johnson Co. stock, 83 shares par value $100, $8,300."* Because of this item (b) the inference is compelling that at this time

Chicago Title & T. Co. v. Merchants Loan & T. Co., 244 Ill. App. 302.

Johnson considered that Grace was the owner out-right of said 83 shares of stock and was not holding the same merely as a trustee for Johnson's use. Apparently, the mailing of this letter and statement was the last definite act of Johnson in connection with the transaction in question. There is no evidence showing that Johnson, thereafter during Grace's lifetime, commenced any action against him seeking the return of said shares of stock.

Complainant's counsel claimed before the master, and claims here, that the agreement, Exhibit A, taken in connection with Exhibit B, is ambiguous and uncertain. Because of this claim the master allowed, over defendant's objection, certain testimony to be introduced in complainant's behalf tending to show that it was not the intention of either Johnson or Grace that the latter should become the absolute owner of the 83 shares of stock, but only that the stock should be transferred to him, as security, for the purpose of thus more fully assuring the payment to him by the Johnson Company of one-third of its profits, and as further protection to him against any liability upon the $20,000 notes, which he had discounted for Johnson's use. In our opinion some of this testimony was not properly admitted, and should not be considered. After carefully considering the provisions of Exhibit A, we cannot say that it is ambiguous or uncertain. By it, in consideration of the premises contained in the recitals, Johnson agreed to transfer the stock to Grace, and further agreed that, when such transfer was made, it should be *"in full payment and satisfaction"* of Grace's claims against Johnson for his share of certain profits growing out of certain building operations. This language, as we read it, plainly indicates that Johnson was to sell the stock outright to Grace for the consideration mentioned, and that the stock was not merely to be held by Grace "as security against loss by him," as the master found. And we do not think

that other clauses in said Exhibit A, or in Exhibit B, militate against this construction. Furthermore, it appears that his particular clause was inserted in the agreement after much discussion and after both Johnson and Grace had agreed that a clause inserted in a prior draft, providing for the return of said stock to Johnson upon the happening of certain contingencies, was to be eliminated. It is well settled that it is not the province of courts to interpolate new terms into contracts against the evident intentions of the parties. (*Robinson v. Stow,* 39 Ill. 568, 572.) ''In giving an interpretation to a written contract it is always proper, when the writing is not specific, to ascertain the circumstances surrounding the parties and the object they had in view to ascertain the true meaning, and effect will be given to the intention wherever it can be done without doing violence to the plain and obvious meaning of the language employed.'' (*Wolf v. Schwill,* 289 Ill. 190, 192.) ''The contentions of the parties to the contract are not the criterion which should guide the court in determining whether the written contract is a full expression of the agreement of the parties. The court must determine this from the writing itself.'' (*Armstrong Paint & Varnish Works v. Continental Can Co.,* 301 Ill. 102, 106.) Furthermore, in construing a contract, it is permissible to look to the interpretation that the parties thereto have placed thereon, *in its performance,* for assistance in ascertaining its true meaning. As said in *Slack v. Knox,* 213 Ill. 190, 195, ''no extrinsic aid can be more valuable.'' (See, also, *Vermont Street M. E. Church of Quincy v. Brose,* 104 Ill. 206, 212; *Sholl Bros. v. Peoria & P. U. Ry. Co.,* 276 Ill. 267, 272.) Immediately following the execution of the agreements in question Johnson transferred and assigned the 83 shares to Grace, and the Johnson Company issued a new certificate to him, certifying that he was the owner of that number of shares in that company, and Grace kept the certifi-

cate in his possession until his death.   There was no writing attached to the assignment or to the new certificate, or any other writing, showing that Grace held the stock merely "as security" and was not the absolute owner.   Furthermore, Johnson's statement (Exhibit 14) rendered to Grace on January 22, 1921, nearly two years after he had transferred the stock to Grace, and after the $20,000 notes had been paid and canceled and Grace had been relieved of any possible liability thereon, clearly discloses that he then considered Grace as the owner of the stock.   Complainant's counsel places considerable reliance upon the testimony of Walter E. Maas, who before the organization of the Johnson Company had been a clerk for Johnson and afterwards was the secretary of the company, as to a claimed verbal admission against interest made by Grace to Johnson in the latter's office shortly after the $20,000 notes had been paid and canceled, about January 15, 1921.   According to Maas, Johnson demanded of Grace that he return the 83 shares of stock, and Grace replied: "Well, it ain't worth anything to me anyhow.   You will get it back at the proper time."   We do not regard this is an admission by Grace that Johnson was then the equitable owner of the stock, but rather a statement that Grace did not consider it of any particular value to him, and that Johnson might get it back at a subsequent time. Furthermore, the testimony of Maas, given after Grace's death, that such a statement was made by Grace, should be received with caution and it is entitled to little weight.   (*Bragg v. Geddes,* 93 Ill. 39, 60; *Laurence v. Laurence,* 164 Ill. 367, 377; *Baker v. Baker,* 161 Ill. App. 430, 437.)

Our conclusion is, on the merits of the present case, that the court properly dismissed complainant's bill for want of equity.

And there is another reason why, in our opinion, the court's action was proper.   And that is, where it ap-

312      APPELLATE COURTS OF ILLINOIS.

Chicago Title & T. Co. v. Merchants Loan & T. Co., 244 Ill. App. 302.

pears, as here, that stock of a corporation stands in the name of a deceased person and has been inventoried as a part of such person's estate by the executor of his will, any person, claiming title to and ownership of the stock, is barred from enforcing his claim unless the same is presented to the probate court or some other court of competent jurisdiction, within one year after letters testamentary are issued to said executor, under the provisions of section 70 of the act concerning administration of estates. (Cahill's St. 1925, ch. 3, ¶ 71.) We think that this proposition is sustained by the holdings and reasonings in the following decided cases: *Morse v. Pacific Ry. Co.,* 191 Ill. 356, 361, 362; *Levy v. Kuss,* 219 Ill. App. 194, 198, 199; *People v. Small,* 319 Ill. 437, 447; *Cone v. Dunham,* 59 Conn. 145, 161. In the present case it appears that Grace's will was probated in the county court of Lake county on December 12, 1921, and letters testamentary issued to defendant; that on April 3, 1922, defendant filed in said court an inventory of Grace's estate, in which was listed the certificate for said 83 shares of stock; that on June 6, 1922, the usual order of adjudication was entered; and that neither Johnson, prior to his death, nor complainant as executor, ever filed in said county court any claim against Grace's estate as to said stock, nor did they or either of them ever file any suit in any court, seeking to establish title to or ownership in said stock, until complainant filed the present bill—nearly *three* years after letters testamentary were issued to defendant, as executor of Grace's will. In *Cone v. Dunham, supra,* an action was commenced for the recovery of certain stock, and for an accounting for cash and stock dividends received, against the executors and devisees and legatees of one Austin Dunham, deceased. The plaintiffs, executors of the will of one Averill, deceased, prevailed in the lower court, but on appeal the judgment rendered in their favor was reversed. One of the grounds

Chicago Title & T. Co. v. Merchants Loan & T. Co., 244 Ill. App. 302.

for the reversal was that, under a statute somewhat similar to the Illinois statute above referred to, the claim was barred by failure either to exhibit it or commence an action on it in apt time in a proper court. It is said in part in the reported opinion (p. 161):

"The failure to exhibit a claim within the time limited by the court of probate for the presentation of claims against a deceased person's estate forever debars the demand.  *  *  *  However clear and indisputable the title, could the merits be inquired into, the limited time has elapsed, and the door of justice has closed. The language of Judge Story, quoted in the defendants' brief, suggests a reason for the strict application of the statute. He says: 'This statute of limitations as to executors and administrators is not created for their own security or benefit, but for the security and benefit of the estates which they represent. It is a wholesome provision designed to produce a speedy settlement of estates, and the repose of titles derived under persons who are dead.' If it appears to work harshly in this case, the law is nevertheless so that, whenever this statute comes in, it applies, regardless of any hardships which it may work, and we must regard this claim as barred by the failure to present it against Mr. Dunham's estate within the time limited by the court of probate."

For the reasons indicated the judgment of the circuit court, dismissing complainant's bill for want of equity, is affirmed.

*Affirmed.*

FITCH and BARNES, JJ., concur.