### STATE *vs.* FREDERICK NEUNER.

The statute (Gen. Statutes, tit. 20, ch. 13, part 5, sec. 5,) provides that a person arraigned for any offence punishable by imprisonment for life, may challenge peremptorily ten jurors, and for any offence the punishment of which may be in the state prison for less than life, four jurors. Held that a crime which might in the discretion of the court be punished by imprisonment for life or for a term less than life, was to be regarded as punishable by imprisonment for life, and that a person arraigned for such a crime was entitled to a peremptory challenge of ten jurors.

INDICTMENT for rape; in the Superior Court. Tried to the jury before *Park, C. J.* Verdict guilty, and motion for a new trial for error in a ruling of the court with regard to the defendant's right of peremptory challenge. The case is fully stated in the opinion.

*W. B. Stoddard,* in support of the motion.

*T. E. Doolittle,* State's Attorney, contra.

LOOMIS, J. Upon the impaneling of the jury for the trial of the defendant for the crime of rape, he claimed the right to peremptorily challenge ten jurors; but the court denied his claim and allowed him to challenge only four. Was this ruling correct? The answer depends on the

proper construction of section five, p. 538, of the General Statutes, Revision of 1875, which provides that—" The accused may challenge peremptorily, when arraigned before the Superior Court for any offence punishable by death, twenty jurors; for any offence punishable by imprisonment for life, ten jurors; for any offence the punishment for which may be imprisonment in the state prison for less than life, four jurors; and for any other offence, two jurors."

The above statute establishes four distinct classes, graduating the number of challenges with reference to the punishment. 1st. If the offence is punishable with death, twenty jurors. 2d. If by imprisonment for life, ten jurors. 3d. If by imprisonment for a term less than life, four jurors. 4th. In the case of all other offences, two jurors.

The court below, having under the act of 1879 a discretion to punish the offence in question either by a sentence for life or for any term less than life, considered the offence as belonging to the third class, and limited the privilege of challenge accordingly. At first view this construction seems very plausible. If the words "may be" are to be taken in their ordinary signification and this clause is to be considered by itself, it would lead to the same conclusion. But in legal signification "may" is often equivalent to "must" or "shall", and should be so rendered when important rights of the accused depend upon it or when the context and general purpose of the act, as in this case, manifestly require it.    *Tichner* v. *McClelland*, 84 Ill., 471; *Kane* v. *Footh*, 70 Ill., 587; *Worcester County* v. *Schlesinger*, 16 Gray, 168; *Commonwealth* v. *Smith*, 111 Mass., 407; *The King* v. *Barlow*, Carthew, 293; *The King* v. *Derby*, Skinner, 370.

We think the true construction of the statute brings the case of the accused within the second class rather than the third.

Rape is still punishable by imprisonment for life. The meaning of the word "punishable" is not "must be punished," but "*liable*" to be so punished. As was held in *Miller* v. *The State*, 58 Geo., 200, "'punishable' includes an

offence which may under some circumstances be punished in the manner designated, although under others it may not be." In *Commonwealth* v. *Pemberton*, 118 Mass., 36, it was held that a statute providing that "murder committed in the commission of, or attempt to commit, any crime punishable with death or imprisonment for life, is murder in the first degree," includes all offences that may be so punished; and AMES, J., in giving the opinion of the court, said that the word "punishable" means "liable to punishment," and that any narrower construction would do violence to its meaning. See also *McLaughlin's case*, 107 Mass., 225.

*Dull* v. *The People*, 4 Denio, 91, is another authority in point. The offence in question was burglary, which was by the New York statute punishable by imprisonment, "not more than ten years, nor less than five." The right to the peremptory challenge claimed was given when the accused was on trial "for an offence punishable with death or imprisonment in a state prison ten years or any longer time." It was held that as the accused might be punished (that is, was liable or subject to be punished,) by imprisonment ten years, he had the right to challenge accordingly.

The argument for the construction we have given also derives strong confirmation from the language of the act of 1870, which first conferred on the accused the rights of challenge now embodied by the revisers in the second and third clauses of the section under consideration. The language of that act was as follows:—"That in all cases where the punishment may be imprisonment in the Connecticut state prison for life, the accused shall have the right to challenge ten jurors peremptorily; and in all other cases where the punishment may be imprisonment in the state prison, the accused shall have the right to challenge four jurors peremptorily." Session Laws of 1870, chapter 100. The two clauses of this act were embodied in the second and third clauses of section five of the revision. If the same language had been repeated no one could dispute the correctness of the defendant's claim. The revisers condensed the three lines composing the first clause, ("that in

State *v.* Neuner.

all cases where the punishment may be imprisonment in the Connecticut state prison for life, the accused shall have the right to challenge ten jurors peremptorily,") into the one line of the second clause of the section under consideration, ("for any offence punishable by imprisonment for life, ten jurors,") but the latter we must regard as the exact equivalent of the former. Whatever obscurity there is arises from the change made in the second clause of the act of 1870.

Having made the number of challenges in the second class depend on the offence being punishable for life, it was quite natural to make the number in the next class depend on a term of years—less than life. But this arrangement became antithetical, and the revisers in forming the third class out of the second clause of the act of 1870 retained the words "may be," which if taken in their ordinary sense might seem to make the number of challenges depend on the minimum rather than the maximum punishment, contrary to the clear meaning of the original act.

But revisers are presumed not to change the law. Bishop on Statutory Crimes, § 98; *Hughes* v. *Farrar*, 45 Maine, 72. If therefore the intention to make a change does not affirmatively appear, and the language of the revision fairly admits of a construction consistent with the former act, the court ought to adopt it.

In this case, as we have shown, the language not only admits, but, in view of the authorities we have cited, requires the construction we have given.

A new trial is advised.

In this opinion the other judges concurred; except PARK, C. J., who having tried the case in the court below, did not sit.