JOHN J. DUFFIELD, EXECUTOR, *vs.* ROBERT G. PIKE, JR., ET AL.

* Third Judicial District, New Haven, Jan. Term, 1899. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The personal property of a testatrix—aside from that specifically bequeathed—proved insufficient to pay the pecuniary legacies. The will directed that certain real estate should be sold by her executor as fast as profitable sales could be effected, and the proceeds used in discharging, first, all taxes and incumbrances upon it, and second, all liens or debts upon certain shares of stock specifically bequeathed, and the balance paid over in equal portions to her nine children, who were also made the general residuary legatees and devisees. *Held* that the direction to the executor to sell the real estate was not a devise to him, but constituted an equitable conversion of the realty into personalty, as respects the balance of the proceeds remaining after the discharge of the obligations specified, in favor of the general legatees whose interests under the will and codicil could not otherwise be secured.

Pecuniary legacies, when no time of payment is fixed, are payable one year after the decease of the testatrix, and bear interest from that date.

Legacies to grandchildren payable as each legatee reaches the age of twenty-one years, are so payable whether that date falls within or after the year following the death of the testatrix.

It is questionable, at least, whether one general legatee can ever be preferred to another on the ground that he is a *quasi*-creditor, unless the will itself shows that he occupies that position.

General Statutes, § 556,—which provides that when any estate bequeathed or devised to any person shall be taken for the payment of debts and charges, all the other legatees, devisees, or heirs, except the widow,

---

* Transferred from first judicial district.

where the devise is made in lieu of dower, shall contribute their proportional part of such estate to the person from whom such legacy or devise shall be taken away,—applies only in favor of specific devisees or legatees who have been deprived of their property by a judicial sale.

Submitted on briefs Jan. 17th—decided March 9th, 1899.

Suit to determine the construction of the will of Ellen M. Pike of Middletown, deceased, brought to the Superior Court in Middlesex County and reserved by that court, *Robinson, J.,* upon an agreed statement of facts, for the consideration and advice of this court.

The will was made in 1889. It first gave $2,100 in pecuniary legacies and a few small specific legacies. It then confirmed agreements which the testatrix had formerly made, upon a valuable consideration, whereby, during her husband's life, the income from 300 shares of stock in the Brainerd Quarry Co. was to be paid to him, and that from 150 shares to her three children by a previous marriage. It then devised to her husband the use of her homestead in Middletown for two years, and to the same children the use of a house in Clinton for the same period, next after which clause came the following : —

"*Eighth.* Subject to the uses contained in the preceding clause, it is my will and I direct my executor hereinafter named to sell all my real estate, situated in the towns of Middletown and Clinton aforesaid, as fast as the same can be profitably sold, and from the proceeds of such sales to pay off all the tax, mortgage and other incumbrances resting upon said real estate, and to apply the balance of the proceeds, if any remain, to the payment of the debts, liens, taxes, mortgages or incumbrances of any kind that may rest upon my stock in the Brainerd Quarry Company of Portland, Connecticut, or upon my quarry lands in said Portland, if any such debts, liens, taxes, mortgages or incumbrances shall exist; and, if any part of said proceeds shall still remain, or if said proceeds are not needed for said purpose, then I direct my executor hereinafter named to pay over said proceeds, or any part thereof remaining, to my nine children aforesaid in equal

shares or portions; and in order that the provisions of this clause of my will may be carried out, my executor hereinafter named is hereby authorized and empowered to sell the said real estate upon such terms and conditions and in such lots and parcels as he may, in his discretion, deem for the best interest of my estate; and I hereby authorize and empower my executor hereafter named to make and execute any deed or deeds proper or necessary to convey said real estate, or any part or parts thereof to the person or persons who may purchase the same, and to receive and receipt for the proceeds of such sale or sales."

The ninth clause, after expressing her desire that all her stock in the Brainerd Quarry Co. and a quarry lot in Portland should ultimately go to her children free from all incumbrances, left the same in trust to apply the income (subject to the rights under said agreements as to 450 shares of the stock) to satisfy all such incumbrances, and when these were satisfied to pay it to her nine children during her husband's life. A power was given to the trustee to sell the quarry lot, should he in his discretion deem it for the best interests of her estate, and pay over the proceeds, after first satisfying therefrom all incumbrances on said lot and on the stock in the Brainerd Quarry Co., to said nine children. Subject to the trust, she left said lot and stock to said children.

There was then a general residuary bequest and devise to said nine children.

By a codicil made in 1891, each of her thirteen grandchildren was given $1,000, to be paid to each "on his or her reaching twenty-one years of age," and the same sum was left absolutely to any grandchild that might be thereafter born, who should survive her, with a provision against lapses, in favor of descendants of grandchildren.

The agreement with her husband, referred to in the will, was made in 1882, and besides securing to him the life use of 300 shares in the Brainerd Quarry Co., contained this provision: "And it is further understood and agreed that the said Ellen M. Pike and the said Robert G. Pike shall make their respective wills in such way that all the said property

of one thousand shares, and all their other property shall ultimately go to and be divided equally between all the children of said Ellen M. Pike either directly or in trust for their benefit. But this agreement shall be deemed open to alteration upon the agreement of said Ellen M. Pike and Robert G. Pike." Said agreement was never altered.

Mrs. Pike died in 1891, when her will was proved, and the usual order made limiting the time for the presentation of claims to six months. Her estate amounted to over $200,000. It consisted of 1,700 shares of the Brainerd Quarry Co. (subject to life estates as to 450 shares), valued at $170,000, other personal property amounting to about $5,700, the quarry lot valued at $12,500, and the Middletown homestead and Clinton house valued together at $21,500.

The executor paid about $5,300 in discharge of unsecured claims and funeral expenses, and over $1,100 in partial liquidation of the expenses of administration. He also paid all other claims against the estate, including over $32,000 secured upon the quarry lot and the shares in the Brainerd Quarry Co., and considerable sums for taxes, surveying, repairs, etc. Except about $400 received from the earnings of vessels, all the funds which he collected were from dividends on the stock in the Brainerd Quarry Co. and rentals and sales of the real estate.

Evidence was received, subject to exception, and a conditional finding made thereon, upon which some of the legatees claimed priority of payment, as appears more fully in the opinion.

The main questions as to which advice was asked were the following : —

*First.* Whether there is any fund belonging to the estate of the testatrix from which the legacies given in the second clause of said will and in the codicil may be paid, or whether said legacies have wholly abated by reason of a failure of estate out of which they may be paid ?

*Second.* If said legacies, or any of them, are adjudged to be payable from the estate, from what fund, or portion of the estate, may they be lawfully paid ?

*Third.* If said legacies, or any of them, are adjudged to be payable from the estate, whether they bear interest or not, and if so, from what date?

*Francis H. Parker*, for the plaintiff.

*Eldon B. Birdsey*, for Robert G. Pike, Jr., et al.

*John H. White* and *Clarence E. Bacon*, for Elizabeth M. Goodwin, et al.

*Charles F. Choate, Jr.*, of Massachusetts, for Ellen M. Whitman et al.

*John L. Hall*, for Silas B. Duffield.

BALDWIN, J. It is to be presumed that the testatrix intended every part of her will to take effect. Several years before its execution she had entered into an agreement with her husband, made upon a valuable consideration, by which she undertook to make her will in such a way that 1,000 shares of stock in the Brainerd Quarry Co. and all her other property should ultimately go to her nine children in equal shares. The will which she in fact made is obviously inconsistent with the obligation which she thus assumed. This inconsistency, however, cannot affect its construction, whatever rights it might give the husband to present a claim against her estate.

The personal estate, not specifically bequeathed, was all needed for the payment of debts and charges. The general legacies must therefore fail, in whole or part, unless they can be satisfied out of real estate, not specifically devised. The remainder in the Middletown homestead and Clinton house falls within that description. By the terms of the will it became the property of the residuary devisees, at law, under the general residuary clause. It is not devised to the executor, but he is directed to convert it into money as fast as sales can be profitably effected. This constitutes, in favor of any

whose interests under the will cannot otherwise be secured, an equitable conversion of realty into personalty. *Fisher* v. *Banta*, 66 N. Y. 468.

The direction by the testatrix that her general legacies shall be paid, is as explicit as her direction that the proceeds of these lands, after satisfying certain debts and charges, shall go to her children. These children were her residuary legatees and devisees. In substance, therefore, the eighth clause declares that the net proceeds of these sales shall become part of her residuary estate. The residue of an estate is that only which remains undisposed of after satisfying all particular legacies and devises, including any which, as here, may be made by a codicil. The doctrine of equitable conversion is not one to be invoked only by those whose immediate benefit the testatrix may seem to have had especially in view in ordering the sale. All her testamentary dispositions are to be taken into account, and if there be any apparent inconsistency between them, the last expression of her intent, to be found in the codicil executed but a few weeks before her death, by which the main pecuniary legacies are given, is entitled to especial weight. A conversion was therefore necessary for the purposes of the will in favor of the general legatees, and the remainder in the Middletown and Clinton real estate, when disincumbered from the liens and charges upon it, constitutes as to them a fund of money out of which they can demand payment.

A claim is made in behalf of some of these to a preference, in case the assets should prove insufficient to satisfy all the bequests. This rests upon evidence, introduced by them, subject to exception, that the provisions in their favor were made upon a valuable consideration.

It is conditionally found upon that evidence, in case this court should deem it admissible, that by the will of Mary M. Brainerd, the mother of the testatrix, who died in 1872, legacies were given to five persons who are named in the second clause of the will now under consideration. That gives to Elizabeth Goodwin, Catherine Coope and Grace E. B. Hasbrouck $500 each, to Mary E. Pope, $300, and to the two

children of Rosalie W. Osborn, $150 each. Mrs. Brainerd's will gave Catherine Coope an annuity of $50 so long as she remained unmarried, and made a similar provision for Grace Coope (now Mrs. Hasbrouck); it also left $50 to Elizabeth Goodwin, and $100 each to Rosalie W. Osborn and Mary E. Pope. These five persons executed a release of their legacies, at the request and for the benefit of Mrs. Pike, and in consideration of her promise that they should lose nothing by it, but that she "would either pay them in her lifetime, or, if unable to do so, would make provision for payment thereof in her will." She made no such payments in her lifetime. Mrs. Hasbrouck was married in 1883.

There is nothing on the face of Mrs. Pike's will to indicate that the legacies given in the second clause were made in discharge of any existing obligation. This cannot be attributed to her ignorance of the importance of such a statement, for the sixth clause expressly refers to and confirms an agreement with three of her children, by which they relinquished certain legacies given to them by the will of Mrs. Brainerd in consideration of receiving from Mrs. Pike the right to receive, during the life of Mr. Pike, the income from certain shares in the Brainerd Quarry Company, and declares it to be her will that they should continue to receive it from her estate until his decease. Nor are the provisions of the second clause equivalent to those in Mrs. Brainerd's will, the benefit of which the five persons in question relinquished. One of them, Mrs. Osborn, died before the will of Mrs. Pike was made. Her estate receives nothing under its provisions, but three times what Mrs. Brainerd left her is given to her children. Two others receive a fixed sum in lieu of an annuity, less in the case of each than the sum to which the annuity would have amounted. The two remaining legatees are given considerably more than was left to them by Mrs. Brainerd.

It is unnecessary to determine whether the evidence thus received was admissible. It is questionable, at least, whether one general legatee can ever be preferred to another on the ground that he is a *quasi*-creditor, unless the will itself shows that he occupies that position. *Lord* v. *Lord*, 23 Conn. 327,

336 ; *Fairfield* v. *Lawson*, 50 id. 501, 508.   But assuming, for
the purposes of this case, that the evidence was competent,
the finding made upon it, taken in connection with the will,
fails to show an intent on the part of Mrs. Pike to give any
of her general legatees a priority over the rest.   Such an in-
tent could only be established by clear and unequivocal proof.
*Duncan* v. *Franklin Township*, 43 N. J. Eq. 143, 10 Atl. Rep.
546.   The grouping of the five persons, in whose behalf the
claim to a preference is made, together in the second clause,
makes it probable that she had in mind the rights under
Mrs. Brainerd's will which they had surrendered in her favor,
but the free hand with which she gave to each, or to their
representatives, what she thought proper, as well as the omis-
sion of any reference to her promise of compensation, indi-
cates that she regarded that as furnishing a reason for the
bestowal of bounty, rather than as establishing a legal demand.
The intention of the testatrix, manifested by the will, when
read in the light of all the attending circumstances which
may properly be considered, is the determining rule for our
decision.   No legatee can claim under the will more than she
meant to give.   If any of them were dissatisfied with the pro-
visions made in their favor, and had a legal claim for more,
their remedy was to present claims against her estate for a
breach of contract.

The executor has paid, in discharge of funeral expenses
and other unsecured debts and proper charges, more than the
total amount of the personal estate left by the testatrix, ex-
clusive of the shares of the Brainerd Quarry Company, which
were specifically bequeathed.   The general legatees now claim
that this entitles them, under General Statutes, § 556, to a
contribution from the specific devisees and legatees.   This
statute provides that " when any estate bequeathed or devised
to any person shall be taken for the payment of debts and
charges, all the other legatees, devisees, or heirs, except the
widow, where the devise is made in lieu of dower, shall con-
tribute their proportional part of such estate to the person
from whom such legacy or devise shall be taken away, and
he may maintain an action to compel such contribution."

Under our common law as modified by General Statutes, § 540, the funds from which debts and charges are to be paid, if the will contains no direction to the contrary, are: first, the personal estate not specifically bequeathed; second, the real estate "not specifically described and devised;" third, specific legacies; and fourth, specific devises. *Brainerd* v. *Cowdrey*, 16 Conn. 1, 498. The provisions of § 556 first appear in the Revision of 1821 (p. 206, § 28) in the following words: "When any testator, by his last will and testament, shall give any personal or real estate to any person or persons, and the same, or any part thereof, shall be taken and sold for the payment of the testator's debts, as the law provides, all the other legatees, devisees, or heirs, shall refund their average or proportional part of such loss, to the person or persons, from whom such legacy or devise shall be taken away; and he or they may maintain an action at law to compel such contribution." By the law then existing (Revision of 1821, p. 206, § 27), when the debts and charges could not be paid out of the personal estate without depriving the widow or heirs of stock or implements necessary for the business on which their livelihood depended, they might be satisfied in part by a sale of real estate in such manner as the Court of Probate might judge most equitable for the widow and heirs, or devisees.

These two sections of the Revision of 1821 are found, with slight alteration, in the Revision of 1866 (pp. 413, § 48, 414, § 55). In preparing that of 1875 it was thought necessary to pursue a rigid policy of abbreviation and condensation, in order to keep our general laws within the compass of a volume of moderate size. Revision of 1875, preface xii. The statute now particularly in question was reproduced (p. 371, § 14) with the omission, among other things, of the words "and sold" after "taken." Revisers are presumed not to change the law, if the language which they use fairly admits of a construction which makes it consistent with the former statute. *State* v. *Neuner*, 49 Conn. 232, 235; *Westfield Cemetery Association* v. *Danielson*, 62 id. 319. General Statutes, § 556, must therefore be read as applying only to a contribu

tion in favor of those to whom some real or personal estate has been devised or bequeathed of which they have been deprived by a judicial sale, or, in other words, in favor of specific devisees or legatees. Pecuniary legacies are not bequests of property which is susceptible of sale. If a specific legacy or devise is taken for the payment of debts and charges, a contribution may be demanded from those (other than the widow taking a provision in lieu of dower) to whom something was given which has not been taken away. Resort cannot be had to specific legacies or devises, so long as any estate not embraced by them remains. The funds applicable to general legacies must have been exhausted before the conditions can arise upon which the statute takes effect. No general legatee, therefore, can claim its benefits.

The legacies contained in the second clause of the will under consideration bear interest, under the ordinary rule, from one year after the decease of the testatrix. Those to the grandchildren named in the codicil bear interest, in the case of each, from the time named for the payment, whether that fall within or after a year from their grandmother's decease. 2 Redfield on Wills, *469; *Bartlett* v. *Slater*, 53 Conn. 102.

The Superior Court is advised that (1) the net proceeds of the remainder in the Middletown and the Clinton real estate is a fund from which the pecuniary legacies given in the second clause of the will and the codicil may be lawfully paid; (2) the legacies given in the second clause bear interest from March 3, 1892, and those given in the codicil from the dates when they were respectively made payable; (3) there is no preference to be given to any of said legacies over others; and (4) there can be no contribution in favor of the general legatees by reason of the application of any personal estate to the payment of debts and charges.

In this opinion the other judges concurred.