CONSOLIDATED RENDERING COMPANY

*vs.*

RAPHAEL MARTIN, GLORIEUSE MARTIN, PAUL MARTIN
AND LEVITE MARTIN.

Aroostook.　　Opinion April 10, 1929.

*Herbert T. Powers,* for plaintiff.
*N. F. Stevens,*
*W. R. Roix,*
*A. S. Crawford, Jr.,* for defendants.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, BARNES, PAT-
TANGALL, JJ.

BARNES, J. This case is on a writ of entry brought to gain possession of a farm located in Madawaska in the county of Aroostook.

Both plaintiff and defendants claim title under Raphael Martin, named as one of the defendants, who, it is agreed, was the owner of the premises on May 21, 1924. On that date he was indebted to the plaintiff in an amount exceeding six thousand dollars, and he then gave deeds of the farm to his sons Paul and Levite, one-half to each in severalty, and received from them a mortgage conditioned for the support of himself and his wife, Glorieuse, for their lifetime, and for the support of an invalid son, Felix, "until he shall have recovered." Felix is dead. The father died after this suit was brought and before trial. At the trial term discontinuance was allowed as to the father, Raphael.

Glorieuse, the wife of Raphael, joined in. the execution of the deeds, for the purpose of relinquishing to the grantees her right and title by descent.

No consideration for the deeds was paid by either Paul or Levite at the time of the conveyances.

On July 16, 1924, while Raphael was living with his son, Paul, in Madawaska, on the premises conveyed by him to this son, the plaintiff made an attachment of all the real estate and all the right, title and interest in any and all real estate in said county of Aroostook owned by Raphael Martin, and at the same time specially attached

the premises involved in this suit, alleging the record title to the premises to be in Levite Martin and Paul Martin.

After obtaining judgment, the land was seized and advertised for sale by a deputy sheriff of the county, and a sale of all the right, title and interest of Raphael Martin to the plaintiff was made on May 18, 1925.

The premises were not redeemed and this action was brought on July 19, 1926.

The case was tried at the September term, 1927.

Defendants pleaded the general issue. Verdict was for the plaintiff, and the case is before the court on exceptions, and the general motion for a new trial by the defendants.

The first exception is to the admission of the sheriff's deeds, as evidence, because no recital appears in either of the deeds, nor in the sheriff's return of sale on the execution that the judgment debtor was known to be an inhabitant of this state. We are not aware of any statute requiring a sheriff's deed to contain recitals as to notice to the execution debtor, and in like situation it has been held that such a deed is not inadmissible as evidence because it contains no recital of the sheriff's advertisement of sale, the statute not requiring it. Den ex dem. *Newcomb* v. *Downam*, 13 N. J. L., 135.

It has been held, at least in one case, that a sheriff's deed, though silent as to service of notice, makes out a *prima facie* case that notice was given. *Burnett* v. *Austin*, 10 Lea (Tenn.), 564.

In a recent case, *Cutting* v. *Harrington*, 104 Me., 96, when the statute provided that the notice to the debtor might be "forwarded to him by mail postage paid," and the officer recited he "Sent to the said (debtor) a written notice by mail," in upholding validity of the sale, the Court said: "We find no previous decision of this court in cases of levy by sale compelling us to construe the officer's recitals in this case so strictly and technically as the plaintiffs would have us."

Cases cited in defendants' brief do not by any fair reading render the deeds defective.

*Pratt* v. *Skofield*, 45 Me., 386, where the officer's deed was held defective for want of sufficient recitals, the defects not being stated, can not guide us here. *Stimson* v. *Ross*, 51 Me., 556. *Lumbert* v.

*Hill,* 41 Me., 475, was a bill to correct an error in description of real estate conveyed by sheriff's deed after levy, and was refused because it called for reform of levy and deeds.

In *Stimson* v. *Ross,* supra, there was a good and sufficient return on the execution; and objection was made that the sheriff's deed did not show compliance with statutory requirements in regard to notice. Here again the defects are not specified, but the Court goes on to say, "It is not necessary that it should. The officer's return on the execution shows that the proper notices were given, and that is sufficient. *Welsh* v. *Joy,* 13 Pick., 477."

"When the debtor's land is taken on execution and transferred to the creditor by levy, or sold at auction, the general rule is that the officer's return shall state in substance that every act was done, required by statute to constitute a valid levy or sale.

"It is not necessary, however, that the officer should state in his return in direct terms the performance of such acts. No particular phraseology is required. It is sufficient if it appears by the language used, or can be reasonably and fairly inferred from it that the act was done." *Millett* v. *Blake,* 81 Me., 531.

"An allegation of fact by an officer is sustained by the ordinary presumption of correctness which attaches to the proceedings of officers. The law seeks to uphold official acts. In all reasonable cases, it presumes that officers have acted legally. It affords ample aid and encouragement to an officer who is honestly endeavoring to execute a public trust. We think there are excellent reasons for the doctrine." *Snow* v. *Weeks,* 75 Me., 105.

Exception one appears to have been taken for the assumed reason that there is not sufficient legal evidence that the officer gave to the judgment debtor the notice of sale provided by the statute.

It is not denied that the alleged owner received the notice of sale, "left at the last and usual place of abode of the said Raphael Martin." There was also due public notice. The argument of counsel for defendant is that in his return of sale, and in the recitals in his deeds, the officer should have specifically recited that defendant Raphael Martin was at the time of giving notice of the sales an inhabitant of the state.

This we think is a nicety of construction of the statute authorizing conveyance of title seized on execution not required. The

notice is the thing. The question is whether or not the alleged owner was given notice of the impending sale.

The privilege accorded the officer of giving the personal notice by mailing, postage prepaid, to an owner not inhabitant of the state, is a proviso attached, to make effective service in the exceptional case, when the alleged owner is not an inhabitant.

The giving of notice may be shown *prima facie* by recitals in the sheriff's deeds. *Cutting* v. *Harrington*, supra, 36 A. L. R., 998.

In the return of sale, made by the officer on May 18, 1925, under authority naming Raphael Martin, of Frenchville, in the county of Aroostook, as the judgment debtor, an exhibit in the case, the officer endorsed on the body of the commission giving his authority to proceed, that he took "real estate and all the right, title and interest which the within named Raphael Martin had in and to the same," and that he seasonably "left at the last and usual place of abode of the said Raphael Martin a written notice," of coming sale by public auction. The officer's deeds severally recite that on a judgment recovered "against Raphael Martin of Frenchville in the county of Aroostook and State of Maine," he seized and sold the real estate.

The statute, Chap. 81, Sec. 33, prescribing procedure prerequisite to sale on execution provides, "The officer in such case shall give written notice of the time and place of sale, to the debtor in person, or by leaving the same at his last and usual place of abode, if known to be an inhabitant of the state, and cause it to be posted in a public place in the town where the land lies, and in two adjoining towns, if so many adjoin."

The objection is that the notice was not properly served, because the officer who made the alleged service did not include in his return, and did not recite in his official deeds that Raphael Martin was known to be an inhabitant of Maine.

We hold that the omission of a statement that the debtor was known to be an inhabitant of the state does not vitiate the notice, especially since we find no denial that the debtor received the notice. *Briggs* v. *Hodgdon*, 78 Me., 514. It follows that, despite this objection, the deeds were admissible as evidence.

The second exception is to the admission of the sheriff's deeds in evidence on the ground, as alleged, that when proceeding under

statute, Chap. 81, Sec. 14, in order to give the creditor the right to bring a writ of entry, the sheriff must proceed, under the execution, by levy and setting off, or appraisement, and not by levy and sale.

At the time of the offer of the deeds in evidence, defendant objected to their admissibility because given in judicial sale upon levy. We think the ruling right.

It has always been in accordance with the spirit of the American law to place within the power of the creditor the means of reaching both the real and personal estate of the debtor.

The appraising of real estate and rights to redeem, is said to have had its origin wholly in the colony of Massachusetts Bay.

And the Act of 1647 is cited as the original statute upon the subject. Washburn on Real Property, 5th Ed., 82.

In our commonwealth of Massachusetts the taking of lands on execution was originally only by appraisement and setting off to a judgment creditor.

But as later provided by statute there, Chap. 188, laws of 1874, any judgment creditor was authorized to levy and sell, and by either method he could secure the fruits of his attachment. *Woodward* v. *Sartwell*, 129 Mass., 210; *Cowles* v. *Dickinson*, 140 Mass., 373.

*Foster* v. *Durant*, 2 Gray, 538, cited by defendant was the law until the statute of 1874.

In Maine, it may be said that by common law levy on real estate could only be extended on land of the judgment debtor by appraisement and setting off.

Laws of 1821, Chap. 60, Sec. 17, provided that rights of redeeming real estate mortgaged might be taken in execution, sold at auction to the highest bidder, and good and sufficient deeds be delivered by the officer, procedure continued by authority of subsequent legislatures until the present day.

By Chap. 80, P. L. of 1881, it was enacted that real estate attachable might be taken on execution and sold, in the same manner as rights of redeeming real estate mortgaged, are taken and sold.

It further provided that no other lawful mode of levy by execution was by it repealed.

Thus was enacted a statute that any real estate attachable might

be conveyed at public sale, when such conveying would perfect the lien evidenced by execution.

The same legislature by resolve provided for revision of the statutes, and the revision of 1883, presented, in Chap. 76, Sec. 1, authority for taking real estate attached by appraisement and setting off; in Sec. 32 of the same chapter authority for taking rights of redeeming lands mortgaged, by sale; and reënacted Chap. 80 of the laws of 1881 as Sec. 42.

In the revision of 1903 the two sections, 32 and 42, of Chap. 76, 1883, were consolidated, becoming Sec. 32 of Chap. 78, now Sec. 32, Chap. 81, R. S.

As has been formerly stated by this court no change of legislative purpose is to be inferred from a mere condensation of prior statutes in a subsequent revision. So the language of the section as now expressed in the Revised Statutes, when traced to the original enactments for the purpose of ascertaining its meaning, gives authority for levy by seizure and sale.

From an early date in our history the right in a judgment creditor to take on execution land of his debtor fraudulently conveyed has been recognized, as expressed in Sec. 14, Chap. 81, R. S., the statute under which demandant in the case at bar secured its execution.

In fact, by the Maine court such conveyances have been held void under the common law. *Tobie and Clark Mfg. Co.* v. *Waldron,* 75 Me., 472. A more accurate phrase might be, voidable at the instance of a creditor defrauded. And the case at bar is an ordinary case where fraudulent conveyance is impeached by grantor's creditor.

Livery of seizin may be had as well through public sale as by setting off by appraisers.

To entitle the plaintiff, demandant here, to recover, it must show, in itself, a sufficient legal title to authorize the maintenance of its action, and if it fails so to do the tenants must prevail in their defense. *Spencer* v. *Bouchard,* 123 Me., 15.

The cases cited by defendants in their brief are not helpful, several being as to land to which title was never in the debtor, and all being upon levy made before the passage of the statute of 1881. We find no case discussing the precise objection raised here.

Levy by appraisement is still necessary in certain cases, and is still available, but that the officer who levies under an execution by auction sale as in the case at bar has not seizin and can not deliver seizin to the purchaser we can not agree.

It should be said that no question is raised as to the bona fides of this creditor purchaser.

Referring to proceedings under the two statutes here to be construed, the Court, in *Coal Co.* v. *Goodwin,* 95 Me., 246, says, "If a conveyance is fraudulent and void as to creditors, the title is regarded as remaining in the fraudulent grantor, and the judgment creditor by a levy acquires such seizin as enables him to maintain a real action against the fraudulent grantee."

"It is well settled by numerous decisions that where the title to real estate was once in the debtor but has been conveyed by him for the purpose of defrauding his creditors, an attachment may be made and the property subsequently seized upon execution, precisely as if no such conveyance had been made or attempted, a conveyance under these circumstances being regarded as void as to a creditor who was intended to be defrauded. After title has been acquired by the levying creditor, he may maintain an action at law to recover possession of the premises, or he may resort to equity to have the apparent cloud upon his title removed." *Fletcher* v. *Tuttle,* 97 Me., 491.

"A fraudulent conveyance is no transfer of the title as against creditors.

"The demandant, therefore, by his levy, acquired a legal title to the estate of Amos Wyman, upon which he had levied." *Wyman* v. *Richardson,* 62 Me., 293.

*Caldwell* v. *Blake,* 69 Me., 458, and *Cutting* v. *Harrington,* supra, appear to be cases where auction sale, under execution, is held good by the court.

The conveyances to the two sons and their mortgage back for life support were executed on May 21, 1924.

At the trial a witness was produced by the plaintiff, to testify that in the month of June, 1924, while debtor and his wife were living with one of their sons on one of the farms conveyed, debtor stated to him, in the absence of either of the sons, that he had transferred the farms to the sons for the purpose of securing life sup-

port. He was to be interrogated as to a subject that may be proven by parol evidence.

To this testimony objection was made and exception saved, as being a declaration after parting with title, and hence not admissible.

"It is a general rule that declarations of a grantor or vendor, made after the conveyance, are not admissible in evidence to impeach the title of the grantee. This general rule is elementary. But there is an exception to it in cases when creditors are seeking to annul the conveyance upon the ground of fraud. In such cases, where evidence is offered tending to show a *prima facie* case of combination or conspiracy between the grantor and the grantee to defraud creditors, the declarations of the grantor, after the deed, may be admitted." *Dixon* v. *Dixon,* 123 Md., 44; Ann Cas., 1915 D., 616. To the same effect, see *Rizan* v. *Rizan,* 139 La., 364, 71 S., 581; *Marowitz* v. *Laud,* 130 Md., 514, 100 Atl., 783; *Wilson* v. *Terry,* 70 N. J. Eq., 231, 62 Atl., 310; *Jones* v. *Simpson,* 116 U. S., 609; *Philpot* v. *Taylor,* 75 Ill., 309; *Chicago Lumber Co.* v. *Cox,* 94 Kan., 563, 147 Pac., 67; *Coburn* v. *Storer,* 67 N. H., 86; *Walker* v. *Harold,* 44 Or., 205, 74 Pac., 705; *Tibbals* v. *Jacobs,* 31 Conn., 428; *Qunin's Administrators* v. *Halbert,* 57 Vt., 178; *Johnson* v. *Spoonheim,* 19 N. D., 191, 41 L. R. A. (N. S.), 1; *Wyman* v. *Fox,* 59 Me., 100; *Carter* v. *Clark,* 92 Me., 225; *Dee* v. *Foster,* 21 Hawaii, 1; Ann. Cas., 1914 C., 973; 12 R. C. L., 676, 22 C. J., 366. In a somewhat analogous case, *Wentworth* v. *Wentworth,* 71 Me., 72, where suit was brought for dower, and defendant introduced a prenuptial agreement to bar right of dower, testimony on the part of the plaintiff, of the husband's declarations in relation to that agreement, was admitted; the Court saying: "The husband's declarations were properly admitted, to show that he fraudulently obtained the agreement about dower. They were admitted and could be used for no other purpose. That question opened a wide field for testimony."

It is claimed by plaintiff that the debtor who retained all rights under a mortgage conditioned upon support of himself and his wife for their several lives had, at the time of the declaration proffered, an interest in the land and for this reason the declaration was an admission which should be recited to the jury.

"A declaration, which, when made, is directly contrary to the pecuniary interest of the person making it is admissible in evidence." *Johnson* v. *Peterson*, 101 Neb., 504, 163 N. W., 869, I. A. L. R., 1235.

If the consideration of the conveyance impeached were in whole or in great part future support, such conveyance is fraudulent as against creditors.

Evidence on this point was introduced, without objection, when Mr. Daigle, the scrivener who drafted the conveyances, was asked what the debtor said he proposed to do at the time he outlined the terms of the conveyances.

Mr. Daigle testified: "Well, the exact words that were said there of course I won't intend to quote, but if I remember well, Mr. Martin explained to me the object of his visit·in this way, that he being sick and two boys that were working with him, it was nothing but natural he would do something for them, and he intended to divide the farm, the Dionne farm, so called, between the two, and as the customary thing, take a mortgage back for his support, his wife's support and an invalid boy by the name of Levite, I think."

This testimony had a tendency to show fraudulent intent; and having this, and testimony of an interest in the land, the jury were entitled to a recital of the declaration objected to, as an admission on the part of the grantor.

On the motion, it should further be said that evidence was presented that the tenants, sons of the grantee, 25 and 26 years old respectively, and both married, had since attaining their majority remained with their father and labored as farm hands on the farms attached in demandant's suit.

Each young man testified that the 1924 deeds were made in accordance with their father's agreement with them when they were minors, that if they would stay with their father and work for him, he would buy the Dionne farm; they would work together and pay for it, and when it was paid for he would give them each a deed, and that he, with his wife and invalid son, would live with the tenants.

Testimony as to the nature and amount of work done by the tenants was fully given, to a jury familiar with such work. The jury found against the contention of the tenants, and we find no evidence that would justify us in holding that the jury miscon-

strued the evidence, or were swayed by passion or prejudice.

It might be fairly concluded from the testimony that the tenants, at the time of the conveyance, knew of the father's indebtedness and entered into a combination or conspiracy to attempt to perpetrate a fraud upon his creditors, and the determination of whether or not there was a contract, under such circumstances, and, if so, what such contract was has been held to be "peculiarly the province of the jury." *Saunders* v. *Saunders*, 90 Me., 284; *Bryant* v. *Fogg*, 125 Me., 420. Again, it is urged that the judgment can not stand because it is against the law in that the Court, when at trial it was represented to him that Raphael Martin, one of the defendants, was dead, did not order notice served upon all interested in the estate of the decedent, as is provided in R. S., Chap. 109, Sec. 16.

The service of such notice, in like cases, seems a prerequisite to a valid judgment. *Bridgham* v. *Prince*, 33 Me., 174; *Trask* v. *Trask*, 78 Me., 103. Lastly, upon the death of her husband Glorieuse Martin had an "interest" in the lands of her husband, a "fee" in the proportion prescribed by the statutes. *Richardson* v. *Wyman*, 62 Me., 280; *Longley* v. *Longley*, 92 Me., 395; *Pinkham* v. *Pinkham*, 95 Me., 71; *Davis* v. *Poland*, 99 Me., 345; *Whiting* v. *Whiting*, 114 Me., 382; *Coombs* v. *Coombs*, 120 Me., 103; *Campbell* v. *Whitehouse*, 122 Me., 414. Wherefore, a valid judgment for demandant could be for not more than two-thirds of the land claimed. *Chandler* v. *Wilson*, 77 Me., 76. Hence the judgment is void as to Glorieuse, and being void in part is void in all and must be reversed. *Buffum* v. *Ramsdell*, 55 Me., 252.

*Motion sustained.*
*New trial granted.*