GEORGE J. BASSETT, BANK COMMISSIONER, *vs.* THE CITY BANK AND TRUST COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued June 23d—decided July 26th, 1932.

*Ernest L. Averill,* Deputy Attorney-General, with whom were *Warren B. Burrows,* Attorney-General, and *William H. Nelson,* Assistant Attorney-General, for the State of Connecticut.

*Lucius F. Robinson* and *William W. Fisher,* with whom was *Barclay Robinson,* for Thomas Hewes, receiver.

*Arthur L. Shipman,* for certain depositors.

*Frederick J. Corbett,* Corporation Counsel, and *David Haymond,* Assistant Corporation Counsel, of the City of Hartford, filed a brief as *amicus curiae.*

HINMAN, J. The facts stipulated on this reservation which we find to be material to the question propounded are as follows: On January 2d, 1932, the state bank commissioner issued an order restraining the defendant from paying out funds or receiving deposits. On January 7th, 1932, upon application of the commissioner, a temporary receiver was appointed by the Superior Court, and the bank has ever since remained in the hands of a receiver.

On January 2d, 1932, the State had on deposit in the commercial department of the defendant in the name of "State of Connecticut, Treasurer's Account" certain of its civil list funds which had been raised by taxation and had been deposited by the state treasurer, a substantial part thereof during the month of December, 1931, to be checked against in meeting cur-

rent payrolls of the State. This deposit amounted to $318,732.35. On that date the State also had on deposit in the commercial department certain funds in the name of "State of Connecticut Agricultural College Fund" amounting to $8557.85, which amount included $5076.40, principal, and $3481.45, accrued interest. The principal is a portion of the sum of $135,000 which was allotted to the State of Connecticut under the provisions of an Act of Congress approved July 2d, 1862, now found in U. S. C. A., Title 7, §§ 301-308, both inclusive.

The State also had on deposit in the savings department of the defendant certain funds in the name of "Treasurer, State of Connecticut, Gilbert Fund, C. A. C." amounting to $12,000. In 1906 Edwin Gilbert died leaving a will by which certain real estate and all tools, machinery, agricultural implements, and live stock thereon at his death, were devised and bequeathed to the Storrs Agricultural College, upon condition that the real estate be taken and maintained in connection with the college as a farm and for the purpose of instruction in farming. There was also bequeathed twelve hundred shares of the capital stock of the Gilbert Manufacturing Company, which stock was not to be sold, and the income thereof to be devoted to the care of the real estate and to instruction in farming. The Storrs Agricultural College is a State institution, now known as Connecticut Agricultural College, and all the income received therefor is the property of the State. The deposit of $12,000, which was made on November 24th, 1931, represents income received by the State from the stock and receipts from the sale of produce raised upon the farm.

The State also had in the savings department a deposit in the name of "Treasurer, State of Connecticut, Custodian of Fitch Fund of Fitch's Home for Soldiers"

amounting to $11,262.79. On September 6th, 1927, a majority of the trustees of the Fitch Home for Soldiers acting under authority of No. 215, Special Acts, 1887, No. 333, Special Acts, 1917, and No. 344, Special Acts, 1919, transferred all the personal property and other assets belonging to the Fitch Home for Soldiers to the State of Connecticut, subject to the provisions of § 4, No. 215, Special Acts, 1887. Under that transfer the state treasurer received several investments and securities, of which he still holds, as a part of the fund, bonds amounting to $9000; the balance of the fund is represented by this deposit.

The defendant corporation was legally authorized and empowered to receive all of the above-mentioned funds on deposit. The question upon which advice is desired is: Is the State of Connecticut entitled to have any or all of these deposits paid either in full or in part as a preferred claim or as preferred claims before the payment of the claims of other depositors?

It is claimed and urged by the Attorney-General ably and exhaustively in brief and argument that, by virtue of the common law, this State as the sovereign and representative of all the people is entitled, as between its deposits and those of others, to the same priority as that appertaining to the British crown, by prerogative right, in the payment of debts due it out of the assets of an insolvent debtor. *Marshall* v. *New York,* 254 U. S. 380, 41 Sup. Ct. 143. The object of that right was to secure and conserve the revenues in order that the State might be maintained and its obligations discharged and it belonged to the king as universal trustee for the people. It constituted a reservation or exception to the general course of law, in favor of the public and for its good. *American Bonding Co.* v. *Reynolds,* 203 Fed. 356, 357. "We think it clear that at common law the king was entitled to preference in

the payment of debts due to him from an insolvent before that of a subject. This is stated in 1 Coke on Littleton (131b). Under the statute (33 Hen. VIII, Ch. 39, § 74) it was enacted that the king's debt shall, in suing out execution, be preferred to that of every other creditor who has not obtained judgment before the king commenced his suit. This apparently has remained the law of England down through and since the American Revolution. *Giles* v. *Grove,* 9 Bing. 128." *In re Carnegie Trust Co.,* 206 N. Y. 390, 396, 99 N. E. 1096, 1098.

It has been held, as a general proposition, in many States which by constitutional provision or otherwise have adopted the common law, that they succeeded to this prerogative right so that the State is entitled to preference over private creditors whose claims otherwise stand on an equal footing with those of the State. 2 Michie, Banks & Banking, p. 231. See cases collected 51 A. L. R., p. 1356 *et seq.* The rule is regarded as grounded on and in accord with public policy in order that the State's funds may not be lost but may be available to meet the expenses of government and discharge the State's obligations. *State ex rel. Rankin* v. *Madison State Bank,* 68 Mont. 342, 218 Pac. 652.

While Connecticut has not formally adopted the common law of England by constitutional or legislative provisions, we have made it our own by "practical adoption" with such exceptions as diversity of circumstances and customs require. *Lewis Oyster Co.* v. *West,* 93 Conn. 518, 526, 107 Atl. 138; *Baldwin* v. *Walker,* 21 Conn. 168, 181; *Fitch* v. *Brainerd,* 2 Day, 163, 189; 1 Swift's Digest, p. 10. If the point were determinative, we could readily recognize the common-law right of priority as applied to banks and trust companies in receivership as within the scope of this policy of practical adoption. "The right is . . . one

. . . adapted to the circumstances, conditions and necessities of the people because essential to sustain the public burdens and discharge the public debts; and unless some provision of statute can be found which clearly evinces a legislative intention to abandon or waive this preference right of the State it is the duty of the courts to preserve rather than to defeat it." *United States F. & G. Co.* v. *Bramwell,* 108 Ore. 261, 269, 217 Pac. 332. However, as stated in the above quotation, this right may be waived, abrogated, or modified by a statute which so provides, either expressly or by necessary implication. *Commonwealth* v. *Commissioner of Banks,* 240 Mass. 244, 133 N. E. 625; *In re Devlin,* 180 Fed. 170. According, as we must, due observance to this principle, we find an insurmountable obstacle to the giving effect of the common-law priority rule in the present case in the construction we feel compelled to give to the statutory provision which is now § 3935 of the General Statutes. This reads as follows: "Sec. 3935. MARSHALLING OF CLAIMS. The avails of the property of any bank or trust company in the hands of a receiver or receivers shall be appropriated ratably to the payment of: (1) The charges and expenses of settling its affairs; (2) the circulating notes, if any; (3) all deposits; (4) all sums which have been subscribed and paid in for its stock by the state or the school fund; (5) all other liabilities; and the surplus shall be distributed among the stockholders."

This statute originated in an Act passed in 1837 (Compilation of 1838, Title VI, pp. 94, 96). After providing for the appointment of receivers of a bank (§§ 14, 15, and 16) it provided (§ 17) that "the avails of the property of the bank shall be appropriated by said receivers in the following manner, viz:—1st. To the payment of the charges and expenses of settling

its concerns—2nd. To the payment of the bank notes and bills in equal proportion—3d. To the payment of all deposits by the treasurer of the state, or by other persons—4th. To the payment of all sums which have been subscribed and paid in by the state or the school fund—5th. To the payment of all the other liabilities in equal proportions. Lastly the surplus shall be paid and distributed among the stockholders in proportion to the amount of their stock." This provision continued without change, except in capitalization and punctuation, through successive revisions of the General Statutes (Rev. 1849, p. 196, § 250; Rev. 1866, p. 154, § 317) until the Revision of 1875 in which it appears (Art. IV, § 4, p. 288) in the following form: "The avails of the property of the bank shall be appropriated rateably to the payment: first, of the charges and expenses of settling its concerns; secondly, of the circulating notes; thirdly, of all deposits; fourthly, to the repayment of all sums which have been subscribed and paid in for its stock by the State, or School Fund; fifthly, to the payment of all other liabilities; and the surplus shall be paid and distributed among the stockholders." The only change thereafter made was by the Revision of 1888 when, Chapter 8, Public Acts, 1879, having extended all of the provisions concerning receivers of banks to trust companies, it was specified that the property referred to in the section was that "of any bank or trust company in the hands of a receiver or receivers." § 1851, Rev. 1888.

The material question is whether the meaning of the statute which theretofore had classed deposits by the state treasurer on a parity, in order of payment, with other deposits was changed by the Revision of 1875. Revisers of statutes are presumed not to change the law if the language which they use fairly admits of a construction which makes it consistent with the for-

mer statute. *Duffield* v. *Pike,* 71 Conn. 521, 529, 42 Atl. 641; *Westfield Cemetery Asso.* v. *Danielson,* 62 Conn. 319, 26 Atl. 345; *State* v. *Neuner,* 49 Conn. 232, 235; 36 Cyc. p. 1067. "In the case of a general revision or codification of statutes it is well settled that a mere change of phraseology or the omission or addition of words will not necessarily change the operation or construction of former statutes, for the new language may be attributed to a desire to condense and simplify the law. The language of the statute as revised or the legislative intent to change the former statute must be clear before it can be pronounced that there is a change of such statute in construction and operation." 25 R. C. L. p. 1050; *Taylor* v. *Bowker,* 111 U. S. 110, 4 Sup. Ct. 397, 28 L. Ed. 368; *Lindsay* v. *United States Savings & Loan Co.,* 127 Ala. 366, 28 So. 717, 51 L. R. A. 393; *Commonwealth* v. *New York Central & H. R. R. Co.,* 206 Mass. 417, 92 N. E. 766, 19 Ann. Cas. 529. "No change of legislative purpose is to be inferred from a mere condensation of prior statutes in a subsequent revision" and, when necessary, resort will be had to the original enactments for the purpose of ascertaining the meaning. *Consolidated Rendering Co.* v. *Martin,* 128 Me. 96, 103, 145 Atl. 896, 64 A. L. R. 790; *Boston & A. Railroad* v. *Boston,* 275 Mass. 133, 175 N. E. 740; *Twombly* v. *Piette,* 99 Vt. 499, 134 Atl. 700.

This principle is particularly applicable to the Revision of 1875. "To students of the development of our statutory law, it has always been known that the Revision of 1875 was carefully done and with the idea of compression. The revisers' preface says (p. xii), we 'have carefully gone over every section of our existing laws, striking out all unnecessary verbiage and repetitions, and condensing every expression which we thought susceptible of it.'" *Hartford Builders Finish Co.* v. *Anderson,* 99 Conn. 343, 351, 122 Atl. 76; *Water-*

*bury* v. *Macken,* 100 Conn. 407, 412, 124 Atl. 5; *Duffield* v. *Pike, supra,* p. 529. It is apparent that the revisers naturally might have regarded the inclusive term "all deposits" as the condensed equivalent of "all deposits by the treasurer of the state, or by other persons." We entertain no doubt that they did so, and that this is the sole significance of the change, rather than so radical an alteration as a departure from the previously declared equality between deposits of the State and those of other depositors and making no specific provision as to the place of State deposits in the order of payment. The suggestion now made that the original enactment should be construed as itself granting priority to deposits by the state treasurer over those of other persons is manifestly untenable. Therefore, recognition of the common-law right of preference in favor of the State as to deposits in banks and trust companies in receivership is precluded by the statute which now, as in the beginning, places State deposits on a parity with those of other depositors in respect to order of payment, and, it may be significant to note, likewise postpones investments by the State for itself or the school fund in the stock of these corporations, to the claims of all depositors both public and private.

The general statutory provisions concerning the order of payment of claims against insolvent estates place "all lawful taxes and all debts due to the State and to the United States" subsequent in order of payment to funeral expenses and the expense of settling the estate, and debts due for the last sickness of a deceased insolvent (§ 4937, General Statutes), and to expenses of settlement in other cases (§ 4870). The State claims that the enactment of the statutes granting a preference to debts due the State over general claims against the estate of an insolvent is to be regarded as a recognition of the common-law rule of priority and, in

a sense, declaratory thereof. This contention, if sustained, would be persuasive for the adoption and application of the common-law rule of priority as applied to bank receiverships only in the absence of a statute prescribing a different rule, which we have held § 3935 to do.

For the same reason, the terms of the general insolvency statutes as to order of payment of claims may not be applied to banks and trust companies, as in cases of receiverships of other corporations. *Ward* v. *Connecticut Pipe Mfg. Co.*, 71 Conn. 345, 41 Atl. 1057; *Lamkin* v. *Baldwin & Lamkin Mfg. Co.*, 72 Conn. 57, 43 Atl. 593; *In re Waddell-Entz Co.*, 67 Conn. 324, 35 Atl. 257. The provisions of § 3935 must be deemed to have withdrawn banks and trust companies in receivership from the class of insolvents to which the priorities provided in the general insolvency statutes apply, and to have set up, as to such receiverships, a special and exclusive order of priority in the payment of certain claims, including those of depositors. *Cook County National Bank* v. *United States,* 107 U. S. 445, 2 Sup. Ct. 561, 27 L. Ed. 537; *Commonwealth* v. *Commissioner of Banks,* 240 Mass. 244, 133 N. E. 625, 628. The ruling in *Lippitt* v. *Thames Loan & Trust Co.,* 88 Conn. 185, 189, 90 Atl. 369, followed in *Shippee* v. *Riverside Trust Co.,* 113 Conn. 661, 156 Atl. 43, giving taxes priority of payment on a par with expenses of settling the receivership affairs and over all the other classes of claims created by § 3935, was permissible for the reason that this statute made no specific provision as to the position of taxes in order of payment; therefore, it was open to the court to accord to taxes, as it did, the priority "generally recognized in the distribution of . . . insolvent estates" (p. 189 of 88 Conn.) or to adopt the "priority of right . . . in respect to the payment of taxes, which ex-

isted at common law in favor of the public treasury."
*In re Carnegie Trust Co., supra,* p. 398; *Marshall* v.
*New York, supra.*

We are unable to see wherein the situation of the
State as to priority is more advantageous with re-
spect to the deposits of the Agricultural College Fund,
the Gilbert Fund, and the Fitch Fund than as to its
general deposits. Under the laws and wills creating
these funds the State by its acceptance thereof became
and now occupies the position of trustee, for the des-
ignated purposes and subject to the conditions im-
posed, including, as to the Agricultural College Fund,
an obligation to replace any portion thereof or of the
interest which is diminished or lost. However, in the
absence of statutory or common-law right in the State
to priority for its deposits there is nothing in the na-
ture of these deposits of trust funds entitling them, as
such, to a special privilege of preference. The agreed
facts negative, and it is not claimed, that the deposits
were made wrongfully or under any agreement which
would afford ground for a special claim to preference.
*Bassett* v. *City Bank & Trust Co.,* 115 Conn. 1, 27,
160 Atl. 60. The case of *Shippee* v. *Pallotti, Andretta
& Co., Inc.,* 114 Conn. 560, 159 Atl. 494, does not aid
the claim to preference for these deposits. No ques-
tion of State priority was there involved, the question
being as to the right of a trust company to set off
against a deposit in a private bank a certificate of de-
posit issued by the trust company and made payable
to the state treasurer as trustee and deposited with
that official in lieu of the bond required by statute to
be given by private bankers. The facts established
that the specific purpose of the certificate evidencing
the deposit—to provide a substitute for other securi-
ties held by the state treasurer in place of the bond
which otherwise would have been required to be given

—was so understood and assented to by all of the parties to the transaction as to constitute a special agreement creating a trust relation between them. No such agreement is disclosed as to the deposits now under consideration, and we are unable to justify a preference in their favor on the ground of such an agreement.

In the brief for the State the Attorney-General cites statutes of thirty-nine States which require that deposits in banks by the State, and, in many instances, by political subdivisions thereof, be secured and protected against impairment or loss, through insolvency or other default, by the deposit of select securities with a designated public officer, or by a surety bond. No New England State appears yet to have imposed this requirement, but the list includes Maryland, New York, Ohio, Illinois, Indiana, and Pennsylvania. It is argued that it is manifested by this legislation that public policy favors and justifies the protection of funds provided for the purpose of carrying on governmental functions against loss or diminution through misfortune or default of the depositary. To this proposition we give ready assent, but we are unable to effectuate this policy, by adoption of common-law preferences or otherwise, because of the statutory situation already discussed. It may well be that, until now, the record and standing of the class of banking institutions utilized as State depositories, the examinations made and supervision exercised by the state banking department, and other similar considerations, have been regarded as rendering unnecessary such special provision for priority of deposits by the State over those of other depositors as could have been accomplished through amendment of the statute prescribing order of payment, or securing the safety of its deposits in the manner provided by statute in other States as above noted.

The need for additional protection arises from the situations created by recent developments in financial affairs and is strikingly exemplified by the present case, but we are constrained to hold, for the reasons which we have stated, that judicial justification of priority for State deposits is not available. The present consequences are regrettable but unavoidable; the future may be provided for through appropriate legislation.

Our answer to the reserved question must be "No." No costs will be taxed in this court.

In this opinion the other judges concurred.